UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK
_____

CARLOS RIVERA,

                          Plaintiff,

v.                                                          9:05-CV-0967
                                                            (TJM/GHL)
DONALD SELSKY, Director of Special Housing
and Inmate Disciplinary Programs, NYS DOCS;
KENNETH S. PERLMAN, Superintendent,
Mid-State Correctional Facility; G. LAWRENCE,
Housing Lieutenant, Mid-State Correctional
Facility; T. HART, Tier III Hearing Officer,
Mid-State Correctional Facility,

                          Defendants.
_____

APPEARANCES:                                                OF COUNSEL:

CARLOS RIVERA, 01-A-3969
    Plaintiff, *Pro Se*
Marcy Correctional Facility
P.O. Box 3600
Marcy, New York 13403

HON. ANDREW M. CUOMO                                        SENTA B. SIUDA, ESQ.
Attorney General for the State of New York                 Assistant Attorney General
   Counsel for Defendants
615 Erie Boulevard West, Suite 102
Syracuse, New York 13204

GEORGE H. LOWE, United States Magistrate Judge

## REPORT-RECOMMENDATION

This action has been referred to me for Report and Recommendation by the Honorable

Thomas J. McAvoy, Senior United States District Judge, pursuant to Local Rule 72.3(c) and 28

U.S.C. § 636(b).

In August of 2005, Carlos Rivera ("Plaintiff"), an inmate at Marcy Correctional Facility ("Marcy C.F."), commenced this action *pro se* against four employees of the New York State Department of Correctional Services ("DOCS"), pursuant to 42 U.S.C. § 1983. (Dkt. No. 1.) Those four employees are (1) Donald Selsky, the Director of DOCS' Special Housing and Inmate Disciplinary Programs, (2) Kenneth S. Perlman, the Superintendent of Mid-State Correctional Facility ("Mid-State C.F."), (3) Greg Lawrence, a lieutenant at Mid-State C.F., and (4) Tom Hart, a vocational supervisor and Tier III hearing officer at Mid-State C.F. (collectively "Defendants"). (*Id.*) Generally, Plaintiff alleges that Defendants violated his rights under the First, Fifth, Eighth and Fourteenth Amendments as well as various state rules and regulations, and/or were negligent in connection with a disciplinary hearing held at Mid-State C.F. in March of 2005. (*Id.*)

Currently pending before the Court are (1) Defendants' motion to dismiss pursuant to Fed. R. Civ. P. 12(b)(6),[1] and (2) Plaintiff's cross-motion for summary judgment. (Dkt. Nos. 13, 28.) For the reasons that follow, I recommend that Defendants' motion be granted and that Plaintiff's cross-motion be denied.

---

[1]     I note that, while Defendants' motion was initially made by Defendant Selsky in January of 2006, it was subsequently joined in by Defendants Perlman, Lawrence and Hart in May of 2006, after they had been served with Plaintiff's Complaint in March of 2006. (*Compare* Dkt. No. 13 *with* Dkt. No. 25.)

## I.      BACKGROUND

### A.      Plaintiff's Complaint

Before I summarize the allegations and claims of Plaintiff's Complaint, an initial point

bears mentioning.  I have, in construing Plaintiff's Complaint, treated that Complaint as

effectively amended by certain factual assertions presented in the document that Plaintiff entitles

"Cross-Motion for Summary Judgment."  I have done this for three reasons: (1) Plaintiff is

proceeding *pro se* in this civil rights matter and thus is entitled to have his pleadings and papers

liberally construed,[2] (2) the factual assertions in Plaintiff's "Cross-Motion for Summary

Judgment" were offered by Plaintiff not just in support of his cross-motion for summary

judgment but *in opposition to Defendants' motion to dismiss*,[3] and (3) the factual assertions in

Plaintiff's "Cross-Motion for Summary Judgment" are consistent with the allegations of

Plaintiff's Complaint.[4]

_____

[2]        "Generally, a court may not look outside the pleadings when reviewing a Rule
12(b)(6) motion to dismiss.  However, the mandate to read the papers of *pro se* litigants
generously makes it appropriate to consider plaintiff's additional materials, such as his
opposition memorandum."  *Gadson v. Goord*, 96 Civ. 7544, 1997 WL 714878, *1, n. 2
(S.D.N.Y. Nov. 17, 1997) (citing, *inter alia, Gill v. Mooney*, 824 F.2d 192, 195 [2d Cir. 1987]
[considering plaintiff's response affidavit on motion to dismiss]); *see also Burgess v. Goord*, 98-
CV-2077, 1999 WL 33458, at *1 n. 1 (S.D.N.Y. Jan. 26, 1999) ("In general, a court may not look
outside the pleadings when reviewing a Rule 12(b)(6) motion to dismiss.  However, the mandate
to read the papers of *pro se* litigants generously makes it appropriate to consider plaintiff's
additional materials, such as his opposition memorandum.") [internal quotation marks and
citations omitted].

[3]        (*See, e.g.*, Dkt. No. 28, Decl. in Opp., ¶ 1, referring to his "cross-motion" also as
an "opposition to defendants . . . [motion] to dismiss"].)

[4]        "[I]n cases where a *pro se* plaintiff is faced with a motion to dismiss, it is
appropriate for the court to consider materials outside the complaint to the extent they 'are
consistent with the allegations in the complaint.'"  *Donhauser v. Goord*, 314 F. Supp.2d 119, 212
(N.D.N.Y. 2004) (considering factual allegations contained in plaintiff's opposition papers)

Turning now to Plaintiff's Complaint, that Complaint, liberally construed, alleges as follows.  On March 15, 2005, while incarcerated at Mid-State C.F., Plaintiff gave to his correctional counselor (Mr. Zick) two "disbursement forms," in order to send money to his family.[5]  One of the forms was for the disbursement of $550, and the other was for the disbursement of $100.[6]  Mr. Zick then gave the forms to Defendant Lawrence.[7]  However, Defendant Lawrence did not process the forms.[8]  On March 22, 2005, Plaintiff filed a grievance (Grievance No. MS-14374-05) against Defendant Lawrence, complaining that Defendant Lawrence was "not doing his job."[9]  Similarly, on March 28, 2005, Plaintiff sent a letter to Captain M. Relf at Mid-State C.F., making the same complaint about Defendant Lawrence.[10]

On March 30, 2005, Defendant Lawrence was making his rounds on the cell block in which Plaintiff was housed, when Plaintiff initiated a conversation with Defendant Lawrence.[11]

---

[citations omitted], *vacated in part on other grounds*, 317 F. Supp.2d 160 (N.D.N.Y. 2004).

[5]    (Dkt. No. 1, ¶ 8 [Plf.'s Compl.]; Dkt. No. 28, Ex. 1 [Plf.'s Cross-Motion, attaching Grievance No. MS-14374-05, incorporated by reference into Plf.'s Compl.].)

[6]    (Dkt. No. 28, Ex. 1 [Plf.'s Cross-Motion, attaching Grievance No. MS-14374-05, incorporated by reference into Plf.'s Compl.].)

[7]    (Dkt. No. 1, ¶ 8 [Plf.'s Compl.]; Dkt. No. 28, Ex. 1 [Plf.'s Cross-Motion, attaching Grievance No. MS-14374-05, incorporated by reference into Plf.'s Compl.].)

[8]    (Dkt. No. 28, Ex. 1 [Plf.'s Cross-Motion, attaching Grievance No. MS-14374-05, incorporated by reference into Plf.'s Compl.]; *see also* Dkt. No. 1, ¶¶ 8-10 [Plf.'s Compl., making this allegation by implication].)

[9]    (Dkt. No. 1, ¶ 9 [Plf.'s Compl.]; Dkt. No. 28, Ex. 1 [Plf.'s Cross-Motion, attaching Grievance No. MS-14374-05, incorporated by reference into Plf.'s Compl.].)

[10]    (Dkt. No. 1, ¶ 9 [Plf.'s Compl.]; Dkt. No. 28, Ex. 2 [Plf.'s Cross-Motion, attaching letter to Capt. M. Relf dated 3/28/05, incorporated by reference into Plf.'s Compl.].)

[11]    (Dkt. No. 1, ¶ 10 [Plf.'s Compl.]; Dkt. No. 28, Plf.'s Rule 7.1 Statement, ¶ 4.)

Plaintiff asked Defendant Lawrence why he had disapproved of Plaintiff sending money home.[12]

Defendant Lawrence responded that "it's a security matter."[13]  In addition, Defendant Lawrence

became angry at Plaintiff for having filed a grievance and letter of complaint against Defendant

Lawrence.[14]  Undeterred, Plaintiff told Defendant Lawrence that he had to give Plaintiff a better

reason for the denial than saying that "it's a security matter."[15]  Defendant Lawrence then

threatened Plaintiff with incarceration in the facility's "box" or Special Housing Unit ("SHU")

for talking back to him.[16]  Approximately fifteen to twenty minutes later, Plaintiff was

summoned to a sergeant's office where he was informed that "Lt. Lawracne [sic] called me and

said that you dissed him and wants you in the box."[17]  Shortly after that, Plaintiff was removed

from the facility's general population and placed in the SHU to await formal disciplinary

proceedings.[18]

On March 31, 2005, Plaintiff was served with a Tier III misbehavior report, charging him

with one count of violating DOCS Rule 107.11, regarding harassment.[19]  In that misbehavior

---

[12]       (*Id.*)

[13]       (*Id.*)

[14]       (*Id.*)

[15]       (*Id.* at ¶ 11.)

[16]       (*Id.*)

[17]       (*Id.* at ¶ 12.)

[18]       (*Id.*)

[19]       (*Id.* at ¶ 14.)  Specifically, DOCS Rule 107.11 provides as follows: "An inmate
shall not harass an employee or any other person verbally or in writing.  Prohibited conduct
includes, but is not limited to, using insolent, abusive, or obscene language or gestures, or writing
or otherwise communicating messages of a personal nature to an employee or any other person

report, Defendant Lawrence described the underlying incident as follows:

> On the above date and approximate time [3/30/05 at 1:30 p.m.], I . . .
> was exiting housing unit 21-3 when Inmate Rivera . . . stopped me and
> began questioning me about disbursement forms submitted by Inmate
> Rivera for large sums of money that after investigation were
> disapproved by me.  During the course of the conversation, Inmate
> Rivera became argumentative and insolent, demanding that I answer
> his questions as to why the disbursements were denied.  After telling
> Inmate Rivera that he would not be given specific reasons, Rivera
> continued his [illegible] that I have to answer to him.[20]

Later that day, Plaintiff requested, was assigned, and met with an employee assistant.[21]  During

this meeting, Plaintiff requested, among other forms of documentary evidence, a copy of the

grievance that he had filed against Defendant Lawrence on March 22, 2005 (Grievance No. MS-

14374-05) and a copy of DOCS Directive 4932 (which provides that "[d]isciplinary measures

should not be overly severe" and that "[d]isciplinary action must never be arbitrary or capricious,

or administered for the purpose of retaliation or revenge").[22]

On March 31, 2005, at 9:40 a.m., Defendant Hart commenced Plaintiff's disciplinary

---

including a person subject of an order of protection with the inmate or who is on the inmate's
negative correspondence list."  N.Y. Comp. Codes R. & Regs., tit. 7, § 270.2(B)(8)(ii).

[20]        (Dkt. No. 28, Ex. 3 [Plf.'s Cross-Motion, attaching Inmate Misbehavior Report
dated 3/30/05, incorporated by reference in Plf.'s Compl.].)

[21]        (Dkt. No. 1, ¶¶ 15-16 [Plf.'s Compl.].)

[22]        (*Id*. at ¶ 16; Dkt. No. 28, Ex. 4 [Plf.'s Cross-Motion, attaching DOCS Directive
4932, dated 5/12/04, incorporated by reference in Plf.'s Compl.].)

hearing.[23]  At the hearing, Plaintiff requested five (5) witnesses.[24]  However, Defendant Hart

denied Plaintiff's request on the ground that "[the] witnesses [were] not there during the

incident."[25]  Plaintiff then offered into evidence (1) a copy of the grievance he had filed against

Defendant Lawrence on March 22, 2005 (Grievance No. MS-14374-05), and (2) a copy of the

complaint letter that Plaintiff had sent to a captain at Mid-State C.F. on March 28, 2005.[26]

Again, Defendant Hart denied Plaintiff's request to introduce the documents into the record.[27]

Plaintiff objected to Defendant Hart's denial of both requests, arguing that the evidence was

relevant to Plaintiff's defense, which was that the disciplinary charges against Plaintiff were

merely a form of retaliation against Plaintiff for having exercised a constitutionally protected

right (i.e., filing a grievance against Defendant Lawrence).[28]  In response, Defendant Hart stated,

"[W]e do thing[s] different . . . at Midstate Correctional Facility."[29]

---

[23]      (Dkt. No. 1, ¶ 17 [Plf.'s Compl., erroneously stating the hearing commenced on
"April 31, 2005"]; Dkt. No. 28, Ex. 4 [Plf.'s Cross-Motion, attaching Superintendent Hearing
Disposition 4/5/05, incorporated by reference in Plf.'s Compl.].)

[24]      (Dkt. No. 1, ¶ 17 [Plf.'s Compl.].)

[25]      (*Id*; Dkt. No. 28, Ex. 5 [Plf.'s Cross-Motion, attaching Witness Interview Notices
dated 4/5/05, incorporated by reference in Plf.'s Compl.]; *but see* Dkt. No. 28, Statement of
Material Facts, ¶ 11 [appearing to assert that Defendant Hart permitted Plaintiff to call one of the
witnesses].)

[26]      (Dkt. No. 1, ¶¶ 19-20 [Plf.'s Compl.].)

[27]      (*Id*. at ¶ 20.)

[28]      (*Id*. at ¶ 21.)

[29]      (*Id*.)

At 10:45 a.m., Defendant Hart concluded Plaintiff's hearing.[30]  Defendant Hart found

Plaintiff guilty as charged.[31]  In the written Superintendent Hearing Disposition, Defendant Hart

stated that the evidence he relied on, in reaching this determination of guilt, consisted of (1) the

hearing testimony of Defendant Lawrence (as well as the misbehavior report), and (2) the hearing

testimony of Corrections Officer R. Tedesco (the relevant Housing Unit officer).[32]  Defendant

Hart sentenced Plaintiff to thirty (30) days "[k]eeplock" confinement "in the Special Housing

Unit," as well as thirty (30) days loss of packages, telephone, recreation and commissary

privileges.[33]  (I take note of the ambiguity present in this allegation–namely, that Plaintiff was

sentenced to "keeplock" confinement *and* confinement in the "Special Housing Unit.")[34]  For a

reason that is unclear from the pleadings and motion papers, it appears that Plaintiff eventually

served only twenty-four (24) of the aforementioned thirty (30) day sentence.[35]

On April 5, 2005, Plaintiff appealed his disciplinary hearing conviction to Defendant

Selsky.[36]  In addition, on April 6, 2005, Plaintiff petitioned Defendant Perlman for discretionary

---

[30]     (Dkt. No. 28, Ex. 4 [Plf.'s Cross-Motion, attaching Superintendent Hearing
Disposition dated 4/5/05, incorporated by reference in Plf.'s Compl.].)

[31]     (Dkt. No. 1, ¶ 24 [Plf.'s Compl.].)

[32]     (Dkt. No. 28, Ex. 4 [Plf.'s Cross-Motion, attaching Superintendent Hearing
Disposition dated 4/5/05, incorporated by reference in Plf.'s Compl.].)

[33]     (Dkt. No. 1, ¶ 25 [Plf.'s Compl.].)

[34]     For a discussion of the difference between "keeplock" confinement and
confinement in a "Special Housing Unit," see *Silva v. Sanford*, 91-CV-1776, 1998 U.S. Dist.
LEXIS 5905, at *17 & n.7 (S.D.N.Y. Apr. 24, 1998).

[35]     (*Id*. at ¶ 35.B.[i].)

[36]     (*Id*. at ¶ 26; Dkt. No. 28, Ex. 8 [Plf.'s Cross-Motion, attaching Appeal Form to
Commissioner, dated 4/7/05, incorporated by reference in Plf.'s Compl.].)

review of his disciplinary hearing conviction, sending Defendant Perlman a follow-up letter regarding his petition for discretionary review on April 19, 2005.[37]  However, Defendant Perlman did not respond to Plaintiff's petition.[38]  In addition, on May 24, 2005, Defendant Selsky affirmed the conviction after review.[39]

Based on the above factual allegations, Plaintiff's Complaint (again, liberally construed) asserts **four** causes of action.  First, Plaintiff asserts a cause of action against **Defendant Selsky,** alleging that he was **negligent** by (1) "fail[ing] to properly train, instruct and/or supervise Defendant Kenneth S. Perlman, and the Disciplinary Program at Midstate Correctional Facility" and (2) "fail[ing] to ensure that all rules, regulations, policies and procedures governing the operation of the . . . [DOCS] Inmate Disciplinary Program . . . were strictly followed by and/or enforced by Midtsate Correctional Facility . . . [with respect to] the determination rendered on [March] 31, 2005 by Defendant Hearing Officer T. Hart."[40]

Second, Plaintiff asserts a cause of action against **Defendant Perlman**, alleging that he **recklessly** (1) "**failed to properly train and/or supervise** . . . [Defendants Lawrence and Hart], or failed to ensure that said defendants were properly trained and/or supervised by others under his charge and control" and (2) "**permitted said Defendants . . . to disregard the rules**,

---

[37]       (Dkt. No. 1, ¶¶ 29-30 [Plf.'s Compl.]; Dkt. No. 28, Exs. 9-10 [Plf.'s Cross-Motion, attaching Plf.'s letters to Def. Perlman dated 4/6/05 and 4/19/05, incorporated by reference in Plf.'s Compl.].)

[38]       (Dkt. No. 1, ¶ 30 [Plf.'s Compl.].)

[39]       (*Id*. at ¶ 31; Dkt. No. 28, Ex. 11 [Plf.'s Cross-Motion, attaching Def. Selsky's Review of Superintendent's Hearing, dated 5/5/05, incorporated by reference in Plf.'s Compl.].)

[40]       (Dkt. No. 1, ¶ 32 [labeled "First Cause of Action"].)

regulations, policies and procedures governing the operation of the [DOCS] Inmate Disciplinary

Program . . . ."[41]  Plaintiff also alleges that Defendant Perlman **intentionally** (1) "**refused to**

exercise the authority conveyed to him under . . . [New York State regulations] . . . to

**immediately order the plaintiff released from his prehearing confinement** in the . . . [SHU]

. . . upon the ground that the plaintiff's alleged misbehavior could not reasonably be said to have

constituted an immediate threat to . . . [anyone]," and (2) "refused to exercise his authority . . . to

order the plaintiff so released, despite knowing that the plaintiff['s] misbehavior report could not

stand the charge of harassment."[42]

Third, Plaintiff asserts a cause of action against **Defendant Hart**, alleging that he

recklessly or intentionally violated Plaintiff's **due process rights** under the **Fifth and**

**Fourteenth Amendments** during Plaintiff's disciplinary hearing by "refus[ing] to allow the

plaintiff to introduce as evidence on his own behalf the exculpatory and relevant Grievance

complaint dated March 22, 2005 and complaint letter to the captain dated March 28, 2005 . . . ."[43]

In addition, Plaintiff alleges that Defendant Hart violated Plaintiff's right to not be subjected to

**cruel and unusual punishment** under the **Eighth Amendment**, when he caused Plaintiff to be

confined without justification for twenty-four (24) days in the SHU, with a corresponding loss of

privileges.[44]

Fourth, Plaintiff asserts a cause of action against **Defendant Lawrence**, alleging that he

---

[41]     (Dkt. No. 1, ¶ 32 [labeled "Second Cause of Action"].)

[42]     (*Id*.)

[43]     (Dkt. No. 1, ¶ 33 [labeled "Third Cause of Action"].)

[44]     (*Id*. at ¶ 35.)

violated Plaintiff's **First Amendment** rights by intentionally filing a false misbehavior report

against Plaintiff in **retaliation** against Plaintiff for exercising his constitutionally protected right

to file a grievance against Defendant Lawrence.[45]   In addition, Plaintiff alleges that Defendant

Lawrence recklessly or **negligently** "failed to conduct himself as a lieutenant at the Midstate

Correctional Facility . . . ."[46]

### B.     Defendants' Motion to Dismiss and Plaintiff's Response

On January 5, 2006, Defendant Selsky moved to dismiss Plaintiff's Complaint on the

ground that Plaintiff failed to state a claim upon which relief may be granted.[47]   On May 12,

2006, Defendants Perlman, Lawrence and Hart were permitted to join in the motion, based on the

fact that--after the filing of the motion--they had been served with Plaintiff's Complaint.[48]

More specifically, Defendants' motion is based on two grounds.   First, Defendants argue

that Plaintiff's Fourteenth Amendment claim should be dismissed because Plaintiff does not

allege a due process liberty interest of which he was deprived.[49]   Specifically, argue Defendants,

the penalty that was assessed against Plaintiff–namely, thirty (30) days of confinement in SHU

with a corresponding loss of privileges–did not impose on Plaintiff an "atypical and significant

hardship in relation to the ordinary incidents of prison life" sufficient to create a liberty interest

---

[45]     (*Id*. at ¶ 34 [labeled "Fourth Cause of Action"].)

[46]     (*Id*.)

[47]     (Dkt. No. 13, Part 2 [Defs.' Mem. of Law].)

[48]     (Dkt. No. 25 [Order Granting Letter Request].)

[49]     (Dkt. No. 13, Part 2 at 3-6 [Defs.' Mem. of Law].)

implicating the due process protections of the Fourteenth Amendment.[50]  Second, Defendants

argue, all of Plaintiff's claims should be dismissed since Defendants are, as a matter of law,

protected by qualified immunity.[51]

   In response to Defendants' motion, Plaintiff filed a two-page affidavit that did not address

the merits of these two arguments but merely opposed dismissal on the ground that Plaintiff has

not yet had the benefit of conducting discovery in the case.[52]  Specifically, Plaintiff's affidavit

stated as follows:

> Carlos Rivera, being duly sworn, deposes and says:
> 1. That on January 5, 2006 respondent Senta B. Siuda[,]
> Counsel for the defendant Donald Selsky had moved for dismissal [of]
> plaintiff['s] Fourteenth Amendment claim.
> 2. That pursuant to Rule 56(f), Fed. R. Civ. P., the plaintiff
> ask[s] this court to hereby deny the respondent's . . . [motion] to
> dismiss . . ., because plaintiff has not yet been afforded the opportunity
> to begin discovery on Defendant Selsky to properly put forth
> discoverable facts and evidence . . . before this Court[.]  See
> **Salahuddin v. Coughlin**, 993 F.2d 306, 309-10 (2d Cir. 1993);
> **Klingele v. Eikenberry**, 849 F.2d 409, 412-413 (9th Cir. 1988); **WSB-
> TV v. Lee**, 842 1266, 1269 (11th Cir. 1988); also see **Villante v. Dept.
> of Corrections of New York**, 786 F.2d 516, 521-23 (2d Cir. 1986).
> **WHEREFORE**, Plaintiff respectfully ask[s] this court to not
> grant the respondent Defendant Selsky's motion to dismiss.[53]

   Subsequently, Defendants filed a reply detailing the deficiencies of Plaintiff's response

papers, including the fact that Rule 56's summary judgment analysis is inappropriate when

---

[50]   (*Id.*)

[51]   (*Id.* at 6-9.)

[52]   (Dkt. No. 16, ¶ 2 [Plf.'s Opp. Aff.].)

[53]   (Dkt. No. 16 [emphasis in original].)

12

deciding a motion to dismiss for failure to state a claim under Rule 12(b)(6).[54]  Rather than

moving for leave to file a sur-reply, Plaintiff filed a document that he characterized as a "cross-

motion for summary judgment."[55]  As stated above, Plaintiff's "cross-motion for summary

judgment" did not merely request the entry of summary judgment in Plaintiff's favor but also

sought to "oppos[e] . . . defendants['] . . . [motion] to dismis[s]."[56]  Specifically, Plaintiff

responded, albeit briefly, to Defendants' two arguments in support of their motion to dismiss.

First, Plaintiff argued that *Sandlin v. Connor* in fact stands for the proposition that Plaintiff had a

protected liberty interest in remaining free from disciplinary segregation for twenty-four (24)

days.[57]  Second, Plaintiff argued that Defendants Hart, Lawrence, Perlman and Selsky are not

entitled to qualified immunity.[58]

     I find that it is proper to consider Plaintiff's July 2006 "cross-motion for summary

judgment" as effectively amending his January 2006 response to Defendants' motion to dismiss,

since (1) as a *pro se* civil rights litigant, Plaintiff is entitled to have his motion papers liberally

construed,[59] (2) Plaintiff had a right to file further opposition papers due to the fact that the Court

---

[54]     (Dkt. No. 17.)

[55]     (*Compare* Dkt. No. 17 [Defs.' Reply filed 2/2/06] *with* Dkt. No. 28 [Plf.'s Cross-Motion dated 7/26/06].)

[56]     (*See*, *e.g.*, Dkt. No. 28, Decl. in Opp., ¶¶ 1, 4.)

[57]     (Dkt. No. 28, Plf.'s Mem. of Law, at 9-10; *see also* Dkt. No. 28, Plf.'s Mem. of Law, at 4, 7 [stating, "When prison officials subject inmate[s] to serious punishments like punitive segregation, they must observe the safeguards of due process"].)

[58]     (Dkt. No. 28, Plf.'s Mem. of Law, at 7-10.)

[59]     *See*, *supra*, note 2 of this Report-Recommendation.

13

had, in May of 2006, granted the request of Defendants Perlman, Lawrence and Hart to join in

Defendant Selsky's motion to dismiss,[60] and (3) Defendants had an opportunity to respond, and

did in fact respond, to the arguments in Plaintiff's motion papers.[61]

## II.    RELEVANT LEGAL STANDARD

A defendant may move to dismiss under Rule 12(b)(6) of the Federal Rules of Civil

Procedure for "failure to state a claim upon which relief can be granted."  Fed. R. Civ. P.

12(b)(6).  To prevail on a motion to dismiss under Rule 12(b)(6) for "failure to state a claim upon

which relief can be granted," a defendant must show "beyond doubt that the plaintiff can prove

no set of facts in support of his claim [that] would entitle him to relief,"[62] or the defendant must

show that the plaintiff's claim "fails as a matter of law."[63]  Thus, a defendant may base a Rule

12(b)(6) motion on either or both of two grounds: (1) a challenge to the "sufficiency of the

pleading" under Rule 8(a)(2);[64] or (2) a challenge to the legal cognizability of the claim.[65]

---

[60]    (Dkt. No. 25 [Order of 5/12/06].)

[61]    (Dkt. No. 29, Part 1 [Defs.' Response Papers].)

[62]    *Conley v. Gibson*, 355 U.S. 41, 45-46 (1957) [citations omitted]; *Chance v. Armstrong*, 143 F.3d 698, 701 (2d Cir. 1998); *see also Swierkiewicz v. Sorema N.A.*, 534 U.S. 506, 514 (2002) ("[A] court may dismiss a complaint only if it is clear that no relief could be granted under any set of facts that could be proved consistent with the allegations.") [internal quotations and citation omitted].

[63]    *Phelps v. Kapnolis*, 308 F.3d 180, 187 (2d Cir. 2002) (citing *Estelle v. Gamble*, 429 U.S. 97, 108, n.16 [1976].)

[64]    *See* 5C Wright & Miller, *Federal Practice and Procedure* § 1363 at 112 (3d ed. 2004) ("A motion to dismiss for failure to state a claim for relief under Rule 12(b)(6) goes to the sufficiency of the pleading under Rule 8(a)(2).") [citations omitted]; *Princeton Indus., Inc. v. Rem*, 39 B.R. 140, 143 (Bankr. S.D.N.Y. 1984) ("The motion under F.R.Civ.P. 12(b)(6) tests the formal legal sufficiency of the complaint as to whether the plaintiff has conformed to F.R.Civ.P. 8(a)(2) which calls for a 'short and plain statement' that the pleader is entitled to relief."); *Bush v.*

14

Rule 8(a)(2) requires that a pleading include "a short and plain statement of the claim showing that the pleader is entitled to relief."  Fed. R. Civ. P. 8(a)(2).  Although Rule 8(a)(2) does not require a pleading to state the elements of a prima facie case,[66] it does require the pleading to "give the defendant fair notice of what the plaintiff's claim is and the grounds upon

---

*Masiello*, 55 F.R.D. 72, 74 (S.D.N.Y. 1972) ("This motion under Fed. R. Civ. P. 12(b)(6) tests the formal legal sufficiency of the complaint, determining whether the complaint has conformed to Fed. R. Civ. P. 8(a)(2) which calls for a 'short and plain statement that the pleader is entitled to relief.'").

[65]       *See Swierkiewicz* 534 U.S. at 514 ("These allegations give respondent fair notice of what petitioner's claims are and the grounds upon which they rest. . . .  In addition, they state claims upon which relief could be granted under Title VII and the ADEA."); *Wynder v. McMahon*, 360 F.3d 73, 80 (2d Cir. 2004) ("There is a critical distinction between the notice requirements of Rule 8(a) and the requirement, under Rule 12(b)(6), that a plaintiff state a claim upon which relief can be granted."); *Phelps v. Kapnolas*, 308 F.3d 180, 187 (2d Cir. 2002) ("Of course, none of this is to say that a court should hesitate to dismiss a complaint when the plaintiff's allegation . . . fails as a matter of law.") [citation omitted]; *Kittay v. Kornstein*, 230 F.3d 531, 541 (2d Cir. 2000) (distinguishing between a failure to meet Rule 12[b][6]'s requirement of stating a cognizable claim and Rule 8[a]'s requirement of disclosing sufficient information to put defendant on fair notice); *In re Methyl Tertiary Butyl Ether Prods. Liab. Litig.*, 379 F. Supp.2d 348, 370 (S.D.N.Y. 2005) ("Although Rule 8 does not require plaintiffs to plead a theory of causation, it does not protect a legally insufficient claim.") [citation omitted]; *Util. Metal Research & Generac Power Sys.*, 02-CV-6205, 2004 U.S. Dist. LEXIS 23314, at *4-5 (E.D.N.Y. Nov. 18, 2004) (distinguishing between the legal sufficiency of the cause of action under Rule 12[b][6] and the sufficiency of the complaint under Rule 8[a]); *accord*, *Straker v. Metro Trans. Auth.*, 331 F. Supp.2d 91, 101-102 (E.D.N.Y. 2004); *Tangorre v. Mako's, Inc.*, 01 Civ. 4430, 2002 U.S. Dist. LEXIS 1658, *6-7 (S.D.N.Y. Jan. 30, 2002) (identifying two sorts of arguments made on a Rule 12[b][6] motion--one aimed at the sufficiency of the pleadings under Rule 8[a], and the other aimed at the legal sufficiency of the claims).

[66]       *See Swierkiewicz*, 534 U.S. at 511-512, 515.

which it rests."[67]  The purpose of this rule is to "facilitate a proper decision on the merits."[68]  A

complaint that fails to comply with this rule "presents far too a heavy burden in terms of

defendants' duty to shape a comprehensive defense and provides no meaningful basis for the

Court to assess the sufficiency of [plaintiff's] claims."[69]

The Supreme Court has characterized this pleading requirement under Rule 8(a)(2) as

"simplified" and "liberal," and has rejected judicially established pleading requirements that

exceed this liberal requirement.  *See Swierkiewicz v. Sorema N.A.*, 534 U.S. 506, 513-514 (2002)

(noting that "Rule 8(a)(2)'s simplified pleading standard applies to all civil actions, with limited

exceptions [including] averments of fraud or mistake.").  However, even this liberal notice

pleading standard "has its limits."[70]

---

[67]     *Dura Pharmaceuticals, Inc. v. Broudo*, 125 S. Ct. 1627, 1634 (2005) (holding that the complaint failed to meet this test) (quoting *Conley*, 355 U.S. at 47); *see also Swierkiewicz*, 534 U.S. at 512 (quoting *Conley*, 355 U.S. at 47); *Leatherman v. Tarrant County Narcotics Intelligence and Coordination Unit*, 507 U.S. 163, 168 (1993) (quoting *Conley*, 355 U.S. at 47).

[68]     *See Swierkiewicz v. Sorema N.A.*, 534 U.S. 506, 514 (2002) (quoting *Conley*, 355 U.S. at 48).

[69]     *Gonzales v. Wing*, 167 F.R.D. 352, 355 (N.D.N.Y. 1996) (McAvoy, J.), *aff'd*, 113 F.3d 1229 (2d Cir. 1997) (unpublished table opinion).  Consistent with the Second Circuit's application of § 0.23 of the Rules of the U.S. Court of Appeals for the Second Circuit, I cite this unpublished table opinion, not as precedential authority, but merely to show the case's subsequent history.  *See, e.g., Photopaint Technol., LLC v. Smartlens Corp.*, 335 F.3d 152, 156 (2d Cir. 2003) (citing, for similar purpose, unpublished table opinion of *Gronager v. Gilmore Sec. & Co.*, 104 F.3d 355 [2d Cir. 1996]).

[70]     2 *Moore's Federal Practice* § 12.34[1][b] at 12-61 (3d ed. 2003); *see, e.g., Dura Pharmaceuticals*, 125 S. Ct. at 1634-1635 (pleading did not meet Rule 8[a][2]'s liberal requirement), *accord, Christopher v. Harbury*, 536 U.S. 403, 416-422 (2002), *Freedom Holdings, Inc. v. Spitzer*, 357 F.3d 205, 234-235 (2d Cir. 2004), *Gmurzynska v. Hutton*, 355 F.3d 206, 208-209 (2d Cir. 2004).  Several unpublished decisions exist from the Second Circuit affirming the Rule 8(a)(2) dismissal of a complaint after *Swierkiewicz*.  *See, e.g., Salvador v. Adirondack Park Agency of the State of N.Y.*, No. 01-7539, 2002 WL 741835, at *5 (2d Cir. Apr.

"In reviewing a complaint for dismissal under Rule 12(b)(6), the court must accept the material facts alleged in the complaint as true and construe all reasonable inferences in the plaintiff's favor."[71] "This standard is applied with even greater force where the plaintiff alleges civil rights violations or where the complaint is submitted *pro se*."[72] Indeed, "courts must construe *pro se* pleadings broadly, and interpret them to raise the strongest arguments that they suggest."[73]

Moreover, when addressing a *pro se* complaint, generally a district court "should not dismiss without granting leave to amend at least once when a liberal reading of the complaint gives any indication that a valid claim might be stated."[74] However, "all normal rules of pleading

---

26, 2002) (affirming pre-*Swierkiewicz* decision from Northern District of New York interpreting Rule 8[a][2]). Although these decisions are not themselves precedential authority, *see* Rules of the U.S. Court of Appeals for the Second Circuit, § 0.23, they appear to acknowledge the continued precedential effect, after *Swierkiewicz*, of certain cases from within the Second Circuit interpreting Rule 8(a)(2). *See Khan v. Ashcroft*, 352 F.3d 521, 525 (2d Cir. 2003) (relying on summary affirmances because "they clearly acknowledge the continued precedential effect" of *Domond v. INS*, 244 F.3d 81 [2d Cir. 2001], after that case was "implicitly overruled by the Supreme Court" in *INS v. St. Cyr*, 533 U.S. 289 [2001]).

[71]   *Hernandez v. Coughlin*, 18 F.3d 133, 136 (2d Cir. 1994) (affirming grant of motion to dismiss) [citation omitted]; *Sheppard v. Beerman*, 18 F.3d 147, 150 (2d Cir. 1994).

[72]   *Hernandez*, 18 F.3d at 136 [citation omitted]; *see also Deravin v. Kerik*, 335 F.3d 195, 200 (2d Cir. 2003) [citations omitted]; *Vital v. Interfaith Med. Ctr.*, 168 F.3d 615, 619 (2d Cir. 1999) [citation omitted].

[73]   *Cruz v. Gomez*, 202 F.3d 593, 597 (2d Cir. 2000) (finding that plaintiff's conclusory allegations of a due process violation were insufficient) (internal quotation and citation omitted).

[74]   *Cuoco v. Moritsugu*, 222 F.3d 99, 112 (2d Cir. 2000) (internal quotation and citation omitted); *see also* Fed. R. Civ. P. 15(a) (leave to amend "shall be freely given when justice so requires"). Of course, granting a *pro se* plaintiff an opportunity to amend is not required where the plaintiff has already been given a chance to amend his pleading.

are not absolutely suspended."[75]  For example, an opportunity to amend should be denied where "the problem with [plaintiff's] causes of action is substantive" such that "[b]etter pleading will not cure it."[76]

Finally, I note that "there are circumstances where an overly litigious inmate, who is quite familiar with the legal system and with pleading requirements, may not be afforded [the] special solicitude" or status that is normally afforded *pro se* litigants.[77]  The rationale for this revocation of special status (at least in the Second Circuit) is not that the *pro se* litigant should be punished but that his excessive litigiousness demonstrates his *experience*, the lack of which is the reason for conferring the special status upon *pro se* litigants in the first place.[78]  Here, I have discovered

---

[75]     *Stinson v. Sheriff's Dep't of Sullivan Cty.*, 499 F. Supp. 259, 262 & n.9 (S.D.N.Y. 1980) (citations omitted), *accord, Gil v. Vogilano*, 131 F. Supp. 2d 486, 491 (S.D.N.Y. 2001).

[76]     *Cuoco*, 222 F.3d at 112 (finding that repleading would be futile) (citation omitted); *see also Cortec Indus., Inc. v. Sum Holding L.P.*, 949 F.2d 42, 48 (2d Cir. 1991) ("Of course, where a plaintiff is unable to allege any fact sufficient to support its claim, a complaint should be dismissed with prejudice.") (affirming, in part, dismissal of claim with prejudice) (citation omitted).

[77]     *Smith v. Burge*, 03-CV-0955, 2006 WL 2805242, at *3 & n.3 (N.D.N.Y. Sept. 28, 2006) (Kahn, J., adopting report-recommendation of Lowe, M.J.) [citations omitted].

[78]     *See, e.g.*, *Johnson v. Eggersdorf*, 8 Fed. Appx. 140 (2d Cir. 2001) (unpublished opinion), *aff'g*, 97-CV-0938, Decision and Order (N.D.N.Y. May 28, 1999) (Kahn, J.), *adopting*, Report-Recommendation, at 1, n.1 (N.D.N.Y. Apr. 28, 1999) (Smith, M.J.); *Johnson v. C. Gummerson*, 201 F.3d 431, *2 (2d Cir. 1999) (unpublished opinion), *aff'g*, 97-CV-1727, Decision and Order (N.D.N.Y. June 11, 1999) (McAvoy, J.), *adopting*, Report-Recommendation (N.D.N.Y. April 28, 1999) (Smith, M.J.); *Gill v. Pidylpchak*, 02-CV-1460, 2006 WL 3751340, at *2 (N.D.N.Y. Dec. 19, 2006) (Scullin, J., adopting report-recommendation of Treece, M.J.); *Saunders v. Ricks*, 03-CV-0598, 2006 WL 3051792, at *2 (N.D.N.Y. Oct. 18, 2006) (Hurd, M.J., adopting report-recommendation of Lowe, M.J.); *Gill v. Frawley*, 02-CV-1380, 2006 WL 1742738, at *3 (N.D.N.Y. June 22, 2006) (McAvoy, J., adopting report-recommendation of Lowe, M.J.); *Davidson v. Talbot*, 01-CV-0473, 2005 U.S. Dist. LEXIS 39576, at *20 (N.D.N.Y. March 31, 2005) (Treece, M.J.), *adopted by* 2006 U.S. Dist. LEXIS 47554 (N.D.N.Y. July 5, 2006) (Scullin, J.); *Gill v. Riddick*, 03-CV-1456, 2005 U.S. Dist. LEXIS 5394, at *7 (N.D.N.Y.

that, before filing the current action, Plaintiff filed four other actions, three of which terminated

in his favor (and the fourth of which is currently pending).[79]  Moreover, I note that Plaintiff's

Complaint and motion papers in the current action appear fairly good--being typed, being

accompanied by affidavits, and containing legal memoranda, exhibits, etc.[80]  Generally, such

facts militate in favor of finding that Plaintiff has, through litigating his other actions, become so

experienced that he no longer is in need of the special status normally afforded *pro se* litigants.[81]

---

March 31, 2005) (Treece, M.J.); *Yip v. Bd. of Tr. of SUNY*, 03-CV-0959, 2004 WL 2202594, at
*3 (W.D.N.Y. Sept. 29, 2004); *Davidson v. Dean*, 204 F.R.D. 251, 257 & n.5 (S.D.N.Y. 2001);
*Santiago v. C.O. Campisi*, 91 F. Supp.2d 665, 670 (S.D.N.Y. 2000); *McGann v. U.S.*, 98-CV-
2192, 1999 WL 173596, at *2 (S.D.N.Y. March 29, 1999); *Hussein v. Pitta*, 88-CV-2549, 1991
WL 221033, at *4 (S.D.N.Y. Oct. 11, 1991).

[79]     These four cases are as follows:

(1) *Rivera v. Goord*, 761 N.Y.S.2d 541, 541-542 (3d Dept. 2003) (granting Plaintiff's
Article 78 petition, annulling Plaintiff's prison disciplinary hearing determination, and
directing DOCS' Commissioner to expunge all references to the instant matter from
Plaintiff's institutional record)l

(2) *Rivera v. N.Y. City Police Dept.*, 03-CV-7277 (S.D.N.Y.) (civil rights action,
dismissed pursuant to stipulation filed 12/2/04, under which defendants agreed to pay
Plaintiff $6,000);

(3) *Rivera v. Selsky*, 03-CV-1098 (N.D.N.Y.) (prisoner civil rights action, dismissed
pursuant to stipulation filed 5/11/05, under which defendants agreed to pay Plaintiff
$2,0000); and

(4) *Rivera v. Goord*, 05-CV-1379 (N.D.N.Y.) (prisoner civil rights action, currently
pending).

[80]     (*See, e.g.*, Dkt. Nos. 1 [Plf.'s Compl.], 16 [Plf.'s Opp. Aff.], 28 [Plf.'s Cross-
Motion for Summ. Judg.].)

[81]      *See, e.g.*, *Saunders v. Ricks*, 03-CV-0598, 2006 WL 3051792, at *2 & n.11
(N.D.N.Y. Oct. 18, 2006) (Hurd, J.) (adopting report-recommendation of Lowe, M.J., which
considered, in deciding whether *pro se* plaintiff should be denied special solicitude, the fact that
"two of [plaintiff's previous] actions were successful inasmuch that [he] recovered $25,000 in

As a result, the current circumstances present a close question regarding whether or not the Court should revoke Plaintiff's special status as a *pro se* litigant. However, after carefully considering the matter, I find that it is not appropriate at this time to revoke Plaintiff's special status as a *pro se* litigant, primarily due to the relatively small number of actions he has filed.[82] Plaintiff is cautioned, however, that he is fast becoming more a pro litigant than a *pro se* litigant.

---

exchange for his agreement to voluntarily dismiss the actions," the fact that "with regard to the current action, . . . the motion papers that [p]laintiff has submitted over the past several years have often been fairly good–being typed, being accompanied by affidavits, and containing legal memoranda, exhibits, etc." and the fact that "[a]s a result, some of [p]laintiff's motions have been granted"); *Sekendur*, 2004 WL 2434220, at *5 (considering, in deciding whether *pro se* plaintiff should be denied leniency normally afforded inexperienced *pro se* litigants, fact that "[plaintiff] has successfully applied for and received . . . [a] patent, and as the record in this case indicates, he engaged in lengthy business negotiations with Anoto and various other corporations").

[82]     *See, e.g.*, *Burge*, 2006 WL 2805242, at *3 & n.4 (refusing to deny leniency to *pro se* civil rights inmate based on his filing of five other lawsuits, after considering issue); *Abbas v. Senkowski*, 03-CV-0476, 2005 WL 2179426, at *2, n.4 (N.D.N.Y. Sept. 9, 2005) (continuing to afford special status to *pro se* litigant despite his litigation experience due to his having filed three other federal actions since 1997); *Loren v. Feerick*, 97-CV-3975, 1997 WL 441939, at *1 & n.9 (S.D.N.Y. Aug. 6, 1997) (continuing to afford special status to *pro se* litigant despite his litigation experience due to his having filed three previous actions in state court regarding current matter, and two previous actions in district court regarding current matter).

III.     **ANALYSIS**

    A.     **Fourteenth Amendment Claim**

       1.     **Failure to State a Claim**

In 1995, the Supreme Court held in *Sandlin v. Connor* that liberty interests protected by the Fourteenth Amendment's Due Process Clause "will generally be limited to freedom from restraint which . . . imposes atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life." *Sandlin v. Connor*, 515 U.S. 472, 483-484 (1995).

Here, Plaintiff alleges that the result of the improperly conducted disciplinary hearing was the imposition of a disciplinary sentence of thirty (30) days "[k]eeplock" confinement "in the Special Housing Unit," as well as thirty (30) days loss of packages, telephone, recreation and commissary privileges.[83]  Conspicuously missing from Plaintiff's detailed Complaint are any allegations that, while in keeplock confinement or SHU confinement, he was denied food, clothing, bedding, heat, running water, showers, toiletries, medicine, visitors, books, an opportunity to exercise, etc.[84]  In addition, Plaintiff acknowledges that he eventually served only twenty-four (24) days of the aforementioned thirty (30) day sentence.[85]

Simply stated, I find that Plaintiff has not alleged facts indicating that he possessed, during the disciplinary hearing, a liberty interest that was protected by the Fourteenth Amendment.  In this regard, I agree with the legal arguments, and legal authorities, set forth by

---

[83]     (Dkt. No. 1, ¶ 25 [Plf.'s Compl.].)

[84]     (*Id*. at ¶¶ 25-31, 35.B.[i]-[ii].)

[85]     (*Id*. at ¶ 35.B.[i].)

Defendants in their memorandum of law.[86]  As a result, I recommend that the Court dismiss

Plaintiff's Fourteenth Amendment due process claim for failure to state a claim upon which relief

may be granted.

> ### 2.    Qualified Immunity from Liability with Regard to Plaintiff's Due Process Claims Concerning His Disciplinary Hearing

"Once qualified immunity is pleaded, plaintiff's complaint will be dismissed unless

defendant's alleged conduct, when committed, violated 'clearly established statutory or

constitutional rights of which a reasonable person would have known.'"[87]  In determining

whether a particular right was *clearly established*, courts in this Circuit consider three factors:

> (1) whether the right in question was defined with 'reasonable specificity'; (2) whether the decisional law of the Supreme Court and the applicable circuit court support the existence of the right in question; and (3) whether under preexisting law a reasonable defendant official would have understood that his or her acts were unlawful.[88]

Regarding the issue of whether *a reasonable person would have known* he was violating such a

clearly established right, this "objective reasonableness"[89] test is met if "officers of reasonable

---

[86]      (Dkt. No. 13, at 3-6 [Defs.' Mem. of Law].)

[87]      *Williams*, 781 F.2d at 322 (quoting *Harlow v. Fitzgerald*, 457 U.S. 800, 815 [1982]).

[88]      *Jermosen v. Smith*, 945 F.2d 547, 550 (2d Cir. 1991) (citations omitted), *cert. denied*, 503 U.S. 962 (1992); *see also Calhoun v. New York State Division of Parole*, 999 F.2d 647, 654 (2d Cir. 1993); *Prue v. City of Syracuse*, 26 F.3d 14, 17-18 (2d Cir. 1994).

[89]      *See Anderson v. Creighton*, 107 S.Ct. 3034, 3038 (1987) ("[W]hether an official protected by qualified immunity may be held personally liable for an allegedly unlawful official action generally turns on the 'objective reasonableness of the action.'") (quoting *Harlow*, 457 U.S. at 819); *Benitez v. Wolff*, 985 F.2d 662, 666 (2d Cir. 1993) (qualified immunity protects defendants "even where the rights were clearly established, if it was objectively reasonable for defendants to believe that their acts did not violate those rights").

22

competence could disagree on [the legality of defendant's actions].'"[90]   As the Supreme Court

explained,

> [T]he qualified immunity defense . . . provides ample protection to all
> but the plainly incompetent or those who knowingly violate the law.
> . . . Defendants will not be immune if, on an objective basis, it is
> obvious that no reasonably competent officer would have concluded
> that a warrant should issue; but if officers of reasonable competence
> could disagree on this issue, immunity should be recognized.[91]

Furthermore, courts in the Second Circuit recognize that "the use of an 'objective

reasonableness' standard permits qualified immunity claims to be decided as a matter of law."[92]

　　　　Here, I agree with Defendants that, on May 24, 2005, it was not clearly established that

Plaintiff possessed, during the disciplinary hearing, a liberty interest that was protected by the

Fourteenth Amendment.[93]   I also agree with Defendants that, at the very least, officers of

reasonable competence could have disagreed on the legality of Defendants' actions with regard to

Plaintiff's disciplinary hearing.[94]   As a result, I recommend that, in the alternative, the Court

dismiss Plaintiff's Fourteenth Amendment due process claim based on qualified immunity.

---

[90]　　　*Malley v. Briggs*, 475 U.S. 335, 341 (1986); *see also Malsh v. Correctional Officer Austin*, 901 F. Supp. 757, 764 (S.D.N.Y. 1995) (citing cases); *Ramirez v. Holmes*, 921 F. Supp. 204, 211 (S.D.N.Y. 1996).

[91]　　　*Malley*, 475 U.S. at 341.

[92]　　　*Malsh*, 901 F. Supp. at 764 (citing *Cartier v. Lussier*, 955 F.2d 841, 844 [2d Cir. 1992] [citing Supreme Court cases].)

[93]　　　(Dkt. No. 13, at 6-9 [Defs.' Mem. of Law].)

[94]　　　(*Id*.)

**B.     Other Claims**

I interpret Defendants' memorandum of law as addressing only Plaintiff's Fourteenth Amendment due process claim.[95]   However, under the circumstances, the Court is able to address the pleading sufficiency and the evidentiary sufficiency of Plaintiff's other claims *sua sponte.* This authority is derived from three sources: (1) 28 U.S.C. § 1915(e)(2), which provides that "the court shall dismiss [a] case [brought by a prisoner proceeding *in forma pauperis*] at any time if the court determines that . . . the action . . . is frivolous or malicious[,] . . . fails to state a claim on which relief may be granted[,] . . . or . . . seeks monetary relief against a defendant who is immune from such relief"; (2) Fed. R. Civ. P. 12(h)(3), which provides that "[w]henever it appears by suggestion of the parties or otherwise that the court lacks jurisdiction of the subject matter, the court shall dismiss the action"; and (3) the Supreme Court's decision in *Celotex Corp. v. Catrett*, 477 U.S. 317 (1986), wherein it held that a district court may, on its own initiative, grant summary judgment against a party if the party had adequate notice of the possibility that the case might be disposed of by summary judgment.[96]

---

[95]     (*See*, *e.g.*, *id*. at 8 [arguing that "[i]n light of the entire record, the ongoing developments in the case law surrounding *due process rights* implicated by prison disciplinary hearings and disciplinary confinement, as detailed supra, and all reasonable inferences drawn in favor of the non-moving plaintiff, it was objectively reasonable for defendant Selsky to believe that his actions did not violate the Constitutional rights of the plaintiff"] [emphasis added].

[96]     *See Celotex Corp. v. Catrett*, 477 U.S. 317, 326 (1986) ("[D]istrict courts are widely acknowledged to possess the power to enter summary judgments *sua sponte*, so long as the losing party was on notice that she had to come forward with all of her evidence.") [citations omitted].

24

### 1.    First Amendment Claim

Claims of retaliation like those asserted by Plaintiff find their roots in the First

Amendment.[97]  Central to such claims is the notion that in a prison setting, corrections officials

may not take actions which would have a chilling effect upon an inmate's exercise of First

Amendment rights.[98]  Because of the relative ease with which claims of retaliation can be

incanted, however, courts have scrutinized such retaliation claims with particular care.[99]  As the

Second Circuit has noted,

> This is true for several reasons.  First, claims of retaliation are difficult
> to dispose of on the pleadings because they involve questions of intent
> and are therefore easily fabricated.  Second, prisoners' claims of
> retaliation pose a substantial risk of unwarranted judicial intrusion into
> matters of general prison administration.  This is so because virtually
> any adverse action taken against a prisoner by a prison official--even
> those otherwise not rising to the level of a constitutional violation--can
> be characterized as a constitutionally proscribed retaliatory act.

*Dawes v. Walker*, 239 F.3d 489, 491 (2d Cir. 2001) (citations omitted), *overruled on other*

*grounds*, *Swierkewicz v. Sorema N.A.*, 534 U.S. 506 (2002).

To prevail on a First Amendment claim of retaliation under 42 U.S.C. § 1983, a plaintiff

must prove by the preponderance of the evidence the following: (1) that the speech or conduct at

issue was "protected"; (2) that the defendants took "adverse action" against the plaintiff–namely,

action that would deter a similarly situated individual of ordinary firmness from exercising his or

her constitutional rights; and (3) that there was a causal connection between the protected speech

---

[97]     *See Gill v. Pidlypchak*, 389 F.3d 379, 380-81 (2d Cir. 2004).

[98]     *See Gill*, 389 F.3d at 381-383.

[99]     *See Flaherty v. Coughlin*, 713 F.2d 10, 13 (2d Cir. 1983).

and the adverse action--in other words, that the protected conduct was a "substantial or motivating factor" in the defendants' decision to take action against the plaintiff.[100]  Under this analysis, adverse action taken for both proper and improper reasons may be upheld if the action would have been taken based on the proper reasons alone.[101]

Here, as stated above, Plaintiff alleges that Defendant Lawrence intentionally filed a false misbehavior report against Plaintiff on March 30, 2005, wrongfully charging him with violating DOCS Rule 107.11, in retaliation against Plaintiff for exercising his constitutionally protected right to file a grievance against Defendant Lawrence on March 22, 2005, and March 28, 2005.[102] However, even liberally construing Plaintiff's Complaint, I can find no factual allegations indicating that there was a *causal connection* between the protected speech and the adverse action in question.  In other words, conspicuously missing from Plaintiff's detailed Complaint is any factual allegation indicating that Plaintiff would not have been issued a misbehavior report based on Plaintiff's conversation with Defendant Lawrence on March 30, 2005, alone.

The disciplinary rule that Plaintiff was charged with violating, DOCS Rule 107.11, provides as follows: "An inmate shall not harass an employee or any other person verbally or in writing.  Prohibited conduct includes, but is not limited to, using insolent, abusive, or obscene language or gestures, or writing or otherwise communicating messages of a personal nature to an

---

[100]     *Mount Healthy City Sch. Dist. Bd. of Educ. v. Doyle*, 429 U.S. 274, 287 (1977); *Gill*, 389 F.3d at 380 (citing *Dawes v. Walker*, 239 F.3d 489, 492 [2d. Cir. 2001]).

[101]     *Graham v. Henderson*, 89 F.3d 75, 79 (2d Cir.1996) (citations omitted).

[102]     (Dkt. No. 1, ¶¶ 9, 21, 34 [Plf.'s Compl.]; Dkt. No. 28, Exs. 1-2 [Plf.'s Cross-Motion, attaching Grievance No. MS-14374-05, and letter to Capt. M. Relf dated 3/28/05, each incorporated by reference into Plf.'s Compl.].)

employee or any other person including a person subject of an order of protection with the inmate

or who is on the inmate's negative correspondence list."  N.Y. Comp. Codes R. & Regs., tit. 7, §

270.2(B)(8)(ii).  Plaintiff does not allege that he did not become insolent through his admittedly

persistent questioning of Defendant Lawrence on March 30, 2005 (during a conversation that

Plaintiff acknowledges he himself initiated).[103]  This omission is conspicuous considering that,

according to Plaintiff's allegations, (1) Plaintiff initiated this repetitive line of questioning of

Defendant Lawrence after Plaintiff had already filed two grievances, which were still pending

and thus were available avenues through which to obtain the relief Plaintiff requested, (2)

Defendant Lawrence described Plaintiff's insolence as the reason for the charge,[104] (3) at no time,

was Defendant Lawrence's misbehavior report found to have been false.[105]

Furthermore, Plaintiff's allegation that his previously filed complaints were the *sole*

factor motivating Defendant Lawrence's misbehavior report is wholly conclusory.  Setting aside

the aforementioned fact that (as alleged) Plaintiff's conversation with Defendant Lawrence on

March 30, 2005, could have constituted a sufficient ground for the misbehavior report, Plaintiff

alleges that Defendant Lawrence filed the misbehavior report *eight days* after Plaintiff filed his

---

[103]    (Dkt. No. 1, ¶¶ 10-11 [Plf.'s Compl.]; Dkt. No. 28, Plf.'s Rule 7.1 Statement, ¶ 4; *see also* Dkt. No. 28, Ex. 8 [Plf.'s Cross-Motion, attaching Appeal Form to Commissioners, in which he alleges, "[I] only ask[ed] [Defendant Lawrence] 3 questions. . . .  I never was loud or use[d] any profanity on him [sic]," incorporated by reference in Plf.'s Compl.]; Dkt. No. 28, Ex. 9 [Plf.'s Cross-Motion, attaching Document entitled "Appeal to disciplinary Superintendent hearing," in which he alleges, "[T]he only thing . . . [that] this [misbehavior report] show[s] is that I asked Lt. Lawrence a question and would have like[d] to receive[] a[n] answer to the question," incorporated by reference in Plf.'s Compl.].)

[104]    (Dkt. No. 28, Ex. 3 [Plf.'s Cross-Motion, attaching Inmate Misbehavior Report dated 3/30/05, incorporated by reference in Plf.'s Compl.].)

[105]    (Dkt. No. 1, ¶¶ 26-31 [Plf.'s Compl.].)

first complaint and *two days* after Plaintiff filed his second complaint.  Such a temporal proximity between a complaint and misbehavior report ordinarily might be sufficient to state a claim of retaliation.  However, here, Plaintiff also alleges that Defendant Lawrence used his conversation with Plaintiff on March 30, 2005, as a pretext for the misbehavior report.  If this was indeed the pretext for the misbehavior report, then why did not Defendant Lawrence instigate such an altercation earlier?  Defendant Lawrence certainly had the opportunity to do so (since Plaintiff alleges that Defendant Lawrence regularly made rounds on Plaintiff's cellblock).[106]  His delay further supports my finding that no rational fact-finder could conclude that Plaintiff's two prior complaints played *any* role (let alone a "substantial or motivating" role) in Defendant Lawrence's decision to take action against Plaintiff.

As a result, I recommend that the Court dismiss Plaintiff's retaliation claim under the First Amendment against Defendant Lawrence for failure to state a claim upon which relief may be granted.

### 2.    Fifth Amendment Claim

The Fifth Amendment to the United States Constitution provides, in pertinent part, that "[n]o person shall be . . . in any criminal case . . . deprived of life, liberty, or property, without due process of law."[107]  Here, as explained above, Plaintiff alleges that Defendant Hart violated Plaintiff's due process rights under the Fifth Amendment during Plaintiff's disciplinary hearing by "refus[ing] to allow the plaintiff to introduce as evidence on his own behalf the exculpatory and relevant Grievance complaint dated March 22, 2005 and complaint letter to the captain dated

---

[106]    (Dkt. No. 1, ¶ 10 [Plf's Compl.].)

[107]    U.S. Const. amend V.

March 28, 2005 . . . ."[108]

A fatal problem exists with this claim.  No independent Fifth Amendment claim exists

with respect to due process violations allegedly occurring at a prison disciplinary proceeding

(other than a possible claim concerning the privilege against self-incrimination), for two reasons:

(1) such a proceeding is not a "criminal" proceeding under the Fifth Amendment;[109] and (2)

"[t]he Due Process Clause of the Fifth Amendment is plainly inapplicable to . . . state actors"[110]

such as those named in Plaintiff's Complaint.[111]  Rather, it is the Fourteenth Amendment that

applies to such due process violations allegedly occurring at Plaintiff's prison disciplinary

hearing.[112]  With respect to the Fourteenth Amendment due process claim that Plaintiff is

---

[108]      (Dkt. No. 1, ¶ 33 [labeled "Third Cause of Action"].)

[109]      *See* U.S. Const. amend V  ("No person shall be . . . *in any criminal case . . .* deprived of life, liberty, or property, without due process of law.") [emphasis added]; *Baxter v. Palmigiano*, 425 U.S. 308, 316 (1975) ("Prison disciplinary hearings are not criminal proceedings . . . ."); *cf. Lisbon v. Goord*, 02-CV-3567, 2003 U.S. Dist. LEXIS 7135, at *6 (S.D.N.Y. Apr. 28, 2003) ("[T]he double jeopardy clause [of the Fifth Amendment] is limited to criminal proceedings and thus it does not pertain to prison disciplinary hearings.") [internal quotations and citations omitted].

[110]      *McCarthy v. Yost*, 01-CV-9590, 2003 U.S. Dist. LEXIS 3307, at *8, n.4 (S.D.N.Y. Feb. 14, 2003) (citing *Bartkus v. Illinois*, 359 U.S. 121, 124 [1959]; *see also Shabazz v. Scully*, 91-CV-6319, 1994 U.S. Dist. LEXIS 6630, at *9 (S.D.N.Y. May 19, 1994) ("[T]he Fifth Amendment Due Process provision is inapplicable to state officials . . . .").

[111]      (Dkt. No. 1, ¶¶ 4-7 [Plf.'s Compl.].)

[112]      *See, e.g.*, *Robinson v. Vaughn*, 92-CV-7048, 1993 U.S. Dist. LEXIS 15566, at *17 (E.D. Pa. Nov. 1, 1993) ("The rights secured to individuals by the Fifth Amendment are generally applicable against the states only through the Fourteenth Amendment.  The court's consideration of [the prisoner plaintiff's] allegations that the defendants' actions toward him [in the prison disciplinary hearing] violated due process is subsumed within its Fourteenth Amendment analysis of his claims.").

asserting in this action, I have already analyzed that claim and found it to be insufficient.[113]

As a result, I recommend that the Court dismiss Plaintiff's Fifth Amendment claim against Defendant Hart for failure to state a claim upon which relief may be granted.

### 3.    Eighth Amendment Claim

Generally, to prevail on such a claim, Plaintiff must show two things: (1) that the conditions of his confinement resulted in deprivation that was *sufficiently serious*; and (2) that Defendant acted with *deliberate indifference* to Plaintiff's health or safety.[114]

With regard to the first element, "the plaintiff must demonstrate that the conditions of his confinement resulted in 'unquestioned and serious deprivations of basic human needs' or 'deprive inmates of the minimal civilized measures of life's necessities.'"[115] "As recognized by the Supreme Court . . ., 'the Constitution does not mandate comfortable prisons,' . . . and conditions that are 'restrictive and even harsh . . . are part of the penalty that criminal offenders pay for their offenses against society.'"[116]

Specifically, a prisoner must prove that he has been deprived of a "single, identifiable human need such as food, warmth, or exercise."[117]  If, however, the condition is not sufficiently

---

[113]    *See*, *supra*, Part III.A.1. of this Report-Recommendation.

[114]    *Farmer v. Brennan*, 511 U.S. 825, 834 (1994); *Davidson v. Murray*, 371 F. Supp.2d 361, 370 (W.D.N.Y. 2005).

[115]    *Davidson*, 371 F. Supp.2d at 370 (citing *Rhodes v. Chapman*, 452 U.S. 337, 347 [1981]).

[116]    *Davidson*, 371 F. Supp.2d at 370 (quoting *Rhodes*, 452 U.S. at 347, 349).

[117]    *Wilson v. Seiter*, 501 U.S. 294, 304 (1991).

prolonged or severe, it does not rise to the level of an Eighth Amendment violation.[118]

With regard to the second element, "[i]n prison-conditions cases [the requisite] state of mind is one of deliberate indifference to inmate health or safety . . . ."[119]  "[D]eliberate indifference describes a state of mind more blameworthy than negligence."[120]  "Deliberate indifference" exists if an official "knows of and disregards an excessive risk to inmate health or safety; the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference."[121]  In other words, "this standard requires that only the deliberate infliction of punishment, and not an ordinary lack of due care for prisoner interests or safety, lead to liability."[122]

Here, as explained above, Plaintiff alleges that Defendant Hart violated Plaintiff's right to not be subjected to cruel and unusual punishment under the Eighth Amendment, when he caused Plaintiff to be confined without justification for twenty-four (24) days in the SHU, with a corresponding loss of privileges.[123]  As also explained above, conspicuously missing from Plaintiff's detailed Complaint are any allegations that, while in keeplock confinement or SHU confinement, he was denied food, clothing, bedding, heat, running water, showers, toiletries,

---

[118]    *Trammel v. Keane*, 338 F.3d 155, 164-65 (2d. Cir. 2003).

[119]    *Farmer*, 511 U.S. at 834.

[120]    *Id*. at 835.

[121]    *Id*. at 837.

[122]    *Blyden v. Mancusi*, 186 F.3d 252, 263 (2d Cir. 1999) (citing *Farmer*, 511 U.S. at 841).

[123]    (Dkt. No. 1, ¶ 35 [Plf.'s Compl.].)

medicine, visitors, books, an opportunity to exercise, etc.; and Plaintiff acknowledges that he

eventually served only twenty-four (24) days of the aforementioned thirty (30) day sentence.[124]

Based on a liberal construction of Plaintiff's Complaint, I conclude that, as a matter of law,

Plaintiff has failed to allege conditions of confinement resulting in a deprivation that was

*sufficiently serious* for purposes of the Eighth Amendment.[125]  Alternatively, I conclude that, as a

matter of law, Defendant Hart did not act with *deliberate indifference* to Plaintiff's health or

safety.

     As a result, I recommend that the Court dismiss Plaintiff's Eighth Amendment claim

against Defendant Hart for failure to state a claim upon which relief may be granted.

---

[124]    *See*, *supra*, Part III.A.1. of this Report-Recommendation.

[125]    *See Scot v. Merola*, 555 F. Supp. 230, 231-234 (S.D.N.Y. 1983) (granting defendants' Rule 12[b][6] motion to dismiss inmate's Eighth Amendment claim based on his incarceration for three-and-a-half months on Rikers Island in housing area without heat where windows were broken, and temperature dropped below fifty degrees); *cf. Trammel*, 338 F.3d at 158-159, 164 (affirming grant of defendants' motion for summary judgment dismissing Eighth Amendment claim based on [1] deprivation of all property except one pair of undershorts and [2] exposure to "bitter cold," because the temperatures to which inmate was exposed were not cold enough, and the period of time in which he was deprived of clothing–seventeen days–was not long enough).

###### 4.      Negligence

"[M]ere negligence will not support a section 1983 claim."[126]  As a result, I recommend

that the Court dismiss Plaintiff's claims of negligence against Defendants Selsky, Perlman, and

Lawrence for failure to state a claim upon which relief may be granted.

###### 5.      Alleged Violations of State Rules, Regulations, Policies or Procedures

Section 1983 provides, in pertinent part, "Every person who . . .subjects, or causes to be

subjected, any citizen of the United States or other person within the jurisdiction thereof to the

deprivation of any rights, privileges, or immunities secured by *the Constitution and laws*, shall be

liable to the party injured . . . ."  42 U.S.C. § 1983 [emphasis added].  The term "the Constitution

and laws" refers to the United States Constitution and *federal* laws.[127]  A violation of a state law

---

[126]      *Burgess v. County of Rensselaer*, 03-CV-0652, 2006 U.S. Dist. LEXIS 91521, at
*26 (N.D.N.Y. Dec. 14, 2006) (McCurn, J.) [citation omitted]; *see also Estelle v. Gamble*, 429
U.S. 97, 106 (1976) ("[A] complaint that a physician has been negligent in diagnosing or treating
a medical condition does not state a valid claim of medical mistreatment under the Eighth
Amendment.  Medical malpractice does not become a constitutional violation merely because the
victim is a prisoner."); *Pena v. Deprisco*, 432 F.3d 98, 112 (2d Cir. 2005) ("In order to establish
a violation of a right to substantive due process, a plaintiff must demonstrate not only
government action but also that the government action was 'so egregious, so outrageous, that it
may fairly be said to shock the contemporary conscience.' . . . [T]he Fourteenth Amendment is
not a 'font of tort law.' . . .  It does not provide a comprehensive scheme for determining the
propriety of official conduct or render all official misconduct actionable. . . .  '[N]egligently
inflicted harm is categorically beneath the threshold of constitutional due process.'") [citations
omitted].

[127]      *See Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 150 (1970) ("The terms of § 1983
make plain two elements that are necessary for recovery.  First, the plaintiff must prove that the
defendant has deprived him of a right secured by the 'Constitution and laws' *of the United
States*.") (emphasis added); *Patterson v. Coughlin*, 761 F.2d 886, 890 (2d Cir. 1985) ("Recovery
under 42 U.S.C. § 1983 . . . is premised upon a showing, first, that the defendant has denied the
plaintiff a constitutional or *federal* statutory right. . . .") (citation omitted; emphasis added);
*Fluent v. Salamanca Indian Lease Auth.*, 847 F. Supp. 1046, 1056 (W.D.N.Y. 1994) ("The initial
inquiry in a § 1983 action is whether the Plaintiff has been deprived of a right 'secured by the
Constitution and laws' *of the United States*.") [emphasis added].

or regulation, *in and of itself*, does not give rise to liability under 42 U.S.C. § 1983.[128]

Furthermore, the violation of a DOCS Directive, alone, is not even a violation of New York State

law or regulation;[129] this is because a DOCS Directive is "merely a system the [DOCS]

Commissioner has established to assist him in exercising his discretion," which he retains,

despite any violation of that Directive.[130]

Having said that, it is true that a state may, *under certain circumstances*, create a liberty

interest protected by the Fourteenth Amendment's Due Process Clause through its enactment of

certain statutory or regulatory measures.  At one point, the Supreme Court held that a state

created such a liberty interest if it repeatedly used explicit language of an unmistakably

mandatory character in connection with requiring specific substantive predicates.  *Hewitt v.

Helms*, 459 U.S. 460, 466-472 (1983).  However, that rule created a perverse incentive (1) for

inmates to "comb" state regulations for mandatory language upon which to base claims of

entitlements, (2) for courts to draw negative inferences from mandatory language in state

---

[128]     *See Doe v. Conn. Dept. of Child & Youth Servs.*, 911 F.2d 868, 869 (2d Cir. 1990)
("[A] violation of state law neither gives [plaintiff] a § 1983 claim nor deprives defendants of the
defense of qualified immunity to a proper § 1983 claim."); *Patterson*, 761 F.2d at 891 ("[A] state
employee's failure to conform to state law does not in itself violate the Constitution and is not
alone actionable under § 1983 . . . .") (citation omitted); *Murray v. Michael*, 03-CV-1434, 2005
WL 2204985, at *10 (N.D.N.Y. Sept. 7, 2005) (DiBianco, M.J.) ("[A]ny violations of state
regulations governing the procedures for disciplinary hearings . . . do not rise to the level of
constitutional violations.") (citation omitted); *Rivera v. Wohlrab*, 232 F. Supp.2d 117, 123
(S.D.N.Y. 2002) ("[V]iolations of state law procedural requirements do not alone constitute a
deprivation of due process since '[f]ederal constitutional standards rather than state law define
the requirements of procedural due process.'") (citing *Russell v. Coughlin*, 910 F.2d 75, 78 n.1
[2d Cir. 1990]).

[129]     *See Rivera v. Wohlrab*, 232 F. Supp.2d 117, 123 (S.D.N.Y. 2002) (citation
omitted); *Lopez v. Reynolds*, 998 F. Supp. 252, 259 (W.D.N.Y. 1997).

[130]     *See Farinaro v. Coughlin*, 642 F. Supp. 276, 280 (S.D.N.Y. 1986).

regulations, and to involve themselves in the day-to-day management of prisons, and (3) for states to not codify prison management procedures, or to confer on correctional personnel "standardless discretion."  *Sandlin v. Connor*, 515 U.S. 472, 477-484 (1995).  As a result, the Supreme Court changed the rule, shifting the courts' focus from the language of a particular state law or regulation to the nature of the deprivation.  *Sandlin*, 515 U.S. at 483-484.[131]  The result of this shift of focus is the current "atypical and significant hardship" analysis discussed, and applied, above in Part III.A. of this Report-Recommendation.

Simply stated, even liberally construing Plaintiff's Complaint, I do not find any factual allegations indicating that there was a violation of any state rules, regulations, policies or procedures that created an  "atypical and significant hardship" sufficient to constitute a violation of the United States Constitution.  As a result, I recommend that the Court dismiss Plaintiff's claim of regulatory violations against Defendants Selksy, Perlman, Hart and Lawrence for failure to state a claim upon which relief may be granted.

### D.    Plaintiff's Cross-Motion for Summary Judgment

I recommend that Plaintiff's cross-motion should be denied as moot, without merit, and procedurally insufficient (since there is no proper Rule 7.1 Statement).[132]

---

[131]    *See also Blouin v. Spitzer*, 356 F.3d 348, 362-363 (2d Cir. 2004) (recognizing abrogation or modification of prior rule which focused on language of state regulation), *accord*, *Anderson v. Recore*, 317 F.3d 194, 198-200 (2d Cir. 2003), *accord*, *Watson v. City of N.Y.*, 92 F.3d 31, 37-38 (2d Cir. 1996), *accord*, *Frazier v. Coughlin*, 81 F.3d 313, 317 (2d Cir. 1996).

[132]    (Dkt. No. 28 [Plf.'s Cross-Motion].)

**ACCORDINGLY**, for the reasons stated above, it is

**RECOMMENDED** that Defendants' motion to dismiss (Dkt. No. 13) be **GRANTED**; and it is further

**RECOMMENDED** that the remaining claims asserted in Plaintiff's Complaint be *sua sponte* **DISMISSED** based on the pleading insufficiencies and evidentiary insufficiencies described above in this Report-Recommendation, as authorized by 28 U.S.C. § 1915(e)(2), Fed. R. Civ. P. 12(h)(3), and *Celotex Corp. v. Catrett*, 477 U.S. 317 (1986); and it is further

**RECOMMENDED** that Plaintiff's cross-motion for summary judgment (Dkt. No. 28) be **DENIED**.

Pursuant to 28 U.S.C. § 636(b)(1), the parties have ten (10) days within which to file written objections to the foregoing report.  Such objections shall be filed with the Clerk of the Court.  **FAILURE TO OBJECT TO THIS REPORT WITHIN TEN (10) DAYS WILL PRECLUDE APPELLATE REVIEW**.  *Roldan v. Racette*, 984 F.2d 85, 89 (2d Cir. 1993) (citing *Small v. Sec'y of Health and Human Servs.*, 892 F.2d 15 [2d Cir. 1989]); 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72, 6(a), 6(e).

Dated: January 5, 2007
      Syracuse, New York

George H. Lowe
United States Magistrate Judge