UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK
_____

CARLOS RIVERA,

                                        Plaintiff,

                                                            9:05-CV-0967
v.                                                          (TJM/GHL)

G. LAWRENCE, Housing Lieutenant,
Mid-State Correctional Facility,

                                        Defendant.

_____

APPEARANCES:                            OF COUNSEL:

CARLOS RIVERA, 01-A-3969
Plaintiff *pro se*
Mohawk Correctional Facility
P.O. Box 8451
Rome, New York 13440

HON. ANDREW M. CUOMO                    SENTA B. SIUDA, ESQ.
Attorney General for the State of New York    Assistant Attorney General
   Counsel for Defendant
615 Erie Boulevard West, Suite 102
Syracuse, New York 13204

GEORGE H. LOWE, United States Magistrate Judge

## **REPORT-RECOMMENDATION**

        This *pro se* prisoner civil rights action, commenced pursuant to 42 U.S.C. § 1983, has been

referred to me for Report and Recommendation by the Honorable Thomas J. McAvoy, Senior

United States District Judge, pursuant to 28 U.S.C. § 636(b) and Local Rule 72.3(c).  Generally,

Carlos Rivera ("Plaintiff") alleged that four employees of the New York State Department of

Correctional Services ("DOCS") violated his rights under the First, Fifth, Eighth, and Fourteenth

Amendments, as well as various state rules and regulations, and/or were negligent in connection

with a disciplinary hearing held at Mid-State Correctional Facility ("C.F.") in March of 2005. (Dkt. No. 1.)

On January 5, 2006, the Defendants filed a Motion to Dismiss. (Dkt. No. 13.) By Order filed March 29, 2007, Senior Judge McAvoy granted in part, and denied in part, the Motion to Dismiss, dismissing all of Plaintiff's claims except Plaintiff's First Amendment retaliation claim against Defendant G. Lawrence. (Dkt. No. 34.) Senior Judge McAvoy also denied a motion entitled "Cross-Motion for Summary Judgment" that Plaintiff filed on July 28, 2006. (Dkt. Nos. 28, 34.)

Currently pending before the Court is Defendant Lawrence's motion for summary judgment pursuant to Fed. R. Civ. P. 56. (Dkt. No. 45.) For the reasons that follow, I recommend that Defendant Lawrence's motion be denied.

## I.   RELEVANT BACKGROUND

The Complaint, liberally construed, alleges as follows. On March 15, 2005, while incarcerated at Mid-State C.F., Plaintiff gave to his correctional counselor, Mr. Zick, two "disbursement forms," in order to send money to his family.[1] One of the forms was for the disbursement of $550, and the other was for the disbursement of $100.[2] Mr. Zick then gave the forms to Defendant Lawrence.[3] However, Defendant Lawrence did not process the forms.[4] On

---

[1]      (Dkt. No. 1, ¶ 8 [Plf.'s Compl.]; Dkt. No. 28, Ex. 1 [Plf.'s Cross-Motion, attaching Grievance No. MS-14374-05, incorporated by reference into Plf.'s Compl.].)

[2]      (Dkt. No. 28, Ex. 1 [Plf.'s Cross-Motion, attaching Grievance No. MS-14374-05, incorporated by reference into Plf.'s Compl.].)

[3]      (Dkt. No. 1, ¶ 8 [Plf.'s Compl.]; Dkt. No. 28, Ex. 1 [Plf.'s Cross-Motion, attaching Grievance No. MS-14374-05, incorporated by reference into Plf.'s Compl.].)

[4]      (Dkt. No. 28, Ex. 1 [Plf.'s Cross-Motion, attaching Grievance No. MS-14374-05, incorporated by reference into Plf.'s Compl.]; *see also* Dkt. No. 1, ¶¶ 8-10 [Plf.'s Compl., making this allegation by implication].)

March 22, 2005, Plaintiff filed a grievance (Grievance No. MS-14374-05) against Defendant

Lawrence, complaining that Defendant Lawrence was "not doing his job."[5]  Similarly, on March 28,

2005, Plaintiff sent a letter to Captain M. Relf at Mid-State C.F., making the same complaint about

Defendant Lawrence.[6]

On March 30, 2005, Defendant Lawrence was making his rounds on the cell block in which

Plaintiff was housed, when Plaintiff initiated a conversation with Defendant Lawrence.[7]  Plaintiff

asked Defendant Lawrence why he had disapproved of Plaintiff sending money home.[8]  Defendant

Lawrence responded that "it's a security matter."[9]  In addition, Defendant Lawrence became angry

at Plaintiff for having filed a grievance and letter of complaint against Defendant Lawrence.[10]

Plaintiff told Defendant Lawrence that he had to give Plaintiff a better reason for the denial than

saying that "it's a security matter."[11]  Defendant Lawrence then threatened Plaintiff with

incarceration in the facility's "box" or Special Housing Unit ("SHU") for talking back to him.[12]

Approximately fifteen to twenty minutes later, Plaintiff was summoned to a sergeant's office where

he was informed that "Lt. Lawracne [sic] called me and said that you dissed him and wants you in

---

[5]       (Dkt. No. 1, ¶ 9 [Plf.'s Compl.]; Dkt. No. 28, Ex. 1 [Plf.'s Cross-Motion, attaching Grievance No. MS-14374-05, incorporated by reference into Plf.'s Compl.].)

[6]       (Dkt. No. 1, ¶ 9 [Plf.'s Compl.]; Dkt. No. 28, Ex. 2 [Plf.'s Cross-Motion, attaching letter to Capt. M. Relf dated 3/28/05, incorporated by reference into Plf.'s Compl.].)

[7]       (Dkt. No. 1, ¶ 10 [Plf.'s Compl.]; Dkt. No. 28 at ¶4 [Plf.'s Rule 7.1 Statement to his Cross-Motion for Summary Judgment].)

[8]       (*Id*.)

[9]       (*Id*.)

[10]      (*Id*.)

[11]      (*Id*. at ¶ 11.)

[12]      (*Id*.)

3

the box."[13]  Shortly after that, Plaintiff was removed from the facility's general population and

placed in the SHU to await formal disciplinary proceedings.[14]

On March 31, 2005, Plaintiff was served with a Tier III misbehavior report, charging him

with one count of violating DOCS Rule 107.11, regarding harassment.[15]  In that misbehavior report,

Defendant Lawrence described the underlying incident as follows:

> On the above date and approximate time [3/30/05 at 1:30 p.m.], I . . . was
> exiting housing unit 21-3 when Inmate Rivera . . . stopped me and began
> questioning me about disbursement forms submitted by Inmate Rivera for
> large sums of money that after investigation were disapproved by me.
> During the course of the conversation, Inmate Rivera became
> argumentative and insolent, demanding that I answer his questions as to
> why the disbursements were denied.  After telling Inmate Rivera that he
> would not be given specific reasons, Rivera continued his [illegible] that I
> have to answer to him.[16]

On March 31, 2005, at 9:40 a.m., Hearing Officer Hart[17] commenced Plaintiff's disciplinary

hearing.[18]  Hearing Officer Hart found Plaintiff guilty as charged.[19]  In the written Superintendent

---

[13]      (*Id*. at ¶ 12.)

[14]      (*Id*.)

[15]      (*Id*. at ¶ 14.)  Specifically, DOCS Rule 107.11 provides as follows: "An inmate shall not harass an
employee or any other person verbally or in writing.  Prohibited conduct includes, but is not limited to, using insolent,
abusive, or obscene language or gestures, or writing or otherwise communicating messages of a personal nature to an
employee or any other person including a person subject of an order of protection with the inmate or who is on the
inmate's negative correspondence list."  N.Y. Comp. Codes R. & Regs., tit. 7, § 270.2(B)(8)(ii).

[16]      (Dkt. No. 28, Ex. 3 [Plf.'s Cross-Motion, attaching Inmate Misbehavior Report dated 3/30/05,
incorporated by reference in Plf.'s Compl.].)

[17]      Hearing Officer Hart was dismissed as a defendant from this action.  (Dkt. No. 34 [Decision & Order
issued by Senior Judge McAvoy on March 29, 2007, dismissing all claims except retaliation claim against Defendant
Lawrence].)

[18]      (Dkt. No. 1, ¶ 17 [Plf.'s Compl., erroneously stating the hearing commenced on "April 31, 2005"];
Dkt. No. 28, Ex. 4 [Plf.'s Cross-Motion, attaching Superintendent Hearing Disposition 4/5/05, incorporated by reference
in Plf.'s Compl.].)

[19]      (Dkt. No. 1, ¶ 24 [Plf.'s Compl.].)

4

Hearing Disposition, Hearing Officer Hart stated that the evidence he relied on, in reaching this

determination of guilt, consisted of (1) the hearing testimony of Defendant Lawrence (as well as the

misbehavior report), and (2) the hearing testimony of Corrections Officer R. Tedesco (the relevant

Housing Unit officer).[20]  Hearing Officer Hart sentenced Plaintiff to thirty (30) days "[k]eeplock"

confinement "in the Special Housing Unit," as well as thirty (30) days loss of packages, telephone,

recreation and commissary privileges.[21]  (I take note of the ambiguity present in this

allegation–namely, that Plaintiff was sentenced to "keeplock" confinement *and* confinement in the

"Special Housing Unit.")[22]  For a reason that is unclear from the pleadings and motion papers, it

appears that Plaintiff eventually served only twenty-four (24) of the aforementioned thirty (30) day

sentence.[23]

On April 5, 2005, Plaintiff appealed his disciplinary hearing conviction to Donald Selsky,

the Director of DOCS' Special Housing and Inmate Disciplinary Programs.[24]  In addition, on April

6, 2005, Plaintiff petitioned Kenneth S. Perlman, Superintendent of Mid-State C.F., for

discretionary review of his disciplinary hearing conviction, sending Superintendent Perlman a

---

[20]        (Dkt. No. 28, Ex. 4 [Plf.'s Cross-Motion, attaching Superintendent Hearing Disposition dated 4/5/05, incorporated by reference in Plf.'s Compl.].)

[21]        (Dkt. No. 1, ¶ 25 [Plf.'s Compl.].)

[22]        For a discussion of the difference between "keeplock" confinement and confinement in a "Special Housing Unit," see *Silva v. Sanford*, 91-CV-1776, 1998 U.S. Dist. LEXIS 5905, at *17 & n.7 (S.D.N.Y. Apr. 24, 1998).

[23]        (Dkt. No. 1, ¶ 35.B.[I] [Plf.'s Compl.].)

[24]        (*Id*. at ¶ 26; Dkt. No. 28, Ex. 8 [Plf.'s Cross-Motion, attaching Appeal Form to Commissioner, dated 4/7/05, incorporated by reference in Plf.'s Compl.].)  Director Selsky was dismissed as a defendant from this action. (Dkt. No. 34 [Decision & Order issued by Senior Judge McAvoy on March 29, 2007, dismissing all claims except retaliation claim against Defendant Lawrence].)

follow-up letter regarding his petition for discretionary review on April 19, 2005.[25]  However, Superintendent Perlman did not respond to Plaintiff's petition.[26]  In addition, on May 24, 2005, Director Selsky affirmed the conviction after review.[27]

Plaintiff's remaining cause of action is asserted against Defendant Lawrence, alleging that he violated Plaintiff's First Amendment rights by intentionally filing a false misbehavior report against Plaintiff in retaliation against Plaintiff for exercising his constitutionally protected right to file a grievance against Defendant Lawrence.[28]

## II.      APPLICABLE LEGAL STANDARD

Under Fed. R. Civ. P. 56, summary judgment is warranted if "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law."  Fed. R. Civ. P. 56(c).  In determining whether a genuine issue of material[29] fact exists, the Court must resolve all ambiguities and draw all reasonable inferences against the moving party.[30]

---

[25]      (Dkt. No. 1, ¶¶ 29-30 [Plf.'s Compl.]; Dkt. No. 28, Exs. 9-10 [Plf.'s Cross-Motion, attaching Plf.'s letters to Def. Perlman dated 4/6/05 and 4/19/05, incorporated by reference in Plf.'s Compl.].)  Superintendent Perlman was dismissed as a defendant from this action.  (Dkt. No. 34 [Decision & Order issued by Senior Judge McAvoy on March 29, 2007, dismissing all claims except retaliation claim against Defendant Lawrence].)

[26]      (Dkt. No. 1, ¶ 30 [Plf.'s Compl.].)

[27]      (*Id*. at ¶ 31; Dkt. No. 28, Ex. 11 [Plf.'s Cross-Motion, attaching Def. Selsky's Review of Superintendent's Hearing, dated 5/5/05, incorporated by reference in Plf.'s Compl.].)

[28]      (*Id*. at ¶ 34 [labeled "Fourth Cause of Action"].)

[29]      A fact is "material" only if it would have some effect on the outcome of the suit.  *Anderson v. Liberty Lobby*, 477 U.S. 242, 248 (1986).

[30]      *Schwapp v. Town of Avon*, 118 F.3d 106, 110 (2d Cir. 1997) [citation omitted]; *Thompson v. Gjivoje*, 896 F.2d 716, 720 (2d Cir. 1990) [citation omitted].

However, when the moving party has met its initial burden of establishing the absence of any genuine issue of material fact, the nonmoving party must come forward with "specific facts showing that there is a genuine issue for trial."[31]  The nonmoving party must do more than "rest upon the mere allegations . . . of the [plaintiff's] pleading" or "simply show that there is some metaphysical doubt as to the material facts."[32]  Rather, "[a] dispute regarding a material fact is *genuine* if the evidence is such that a reasonable jury could return a verdict for the nonmoving party."[33]

## III.    ANALYSIS

### A.    First Amendment Retaliation Claim

Claims of retaliation like those asserted by Plaintiff find their roots in the First Amendment. *See Gill v. Pidlypchak*, 389 F.3d 379, 380-81 (2d Cir. 2004).  Central to such claims is the notion that in a prison setting, corrections officials may not take actions which would have a chilling effect upon an inmate's exercise of First Amendment rights.  *See Gill*, 389 F.3d at 381-383.  Because of the relative ease with which claims of retaliation can be incanted, however, courts have scrutinized such retaliation claims with particular care.  *See Flaherty v. Coughlin*, 713 F.2d 10, 13 (2d Cir. 1983).  As the Second Circuit has noted,

> [t]his is true for several reasons.  First, claims of retaliation are difficult to dispose of on the pleadings because they involve questions of intent and are therefore easily

---

[31]     Fed. R. Civ. P. 56(e) ("When a motion for summary judgment is made [by a defendant] and supported as provided in this rule, the [plaintiff] may not rest upon the mere allegations . . . of the [plaintiff's] pleading, but the [plaintiff's] response, by affidavits or as otherwise provided in this rule, must set forth specific facts showing that there is a genuine issue for trial.  If the [plaintiff] does not so respond, summary judgment, if appropriate, shall be entered against the [plaintiff].");  *see also Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 585-87 (1986).

[32]     Fed. R. Civ. P. 56(e) ("When a motion for summary judgment is made [by a defendant] and supported as provided in this rule, the [plaintiff] may not rest upon the mere allegations . . . of the [plaintiff's] pleading . . . .");  *Matsushita*, 475 U.S. at 585-86;  *see also Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247-48 (1986).

[33]     *Ross v. McGinnis*, 00-CV-0275, 2004 WL 1125177, at *8 (W.D.N.Y. Mar. 29, 2004) [internal quotations omitted; emphasis added].

fabricated.  Second, prisoners' claims of retaliation pose a substantial risk of unwarranted judicial intrusion into matters of general prison administration.  This is so because virtually any adverse action taken against a prisoner by a prison official--even those otherwise not rising to the level of a constitutional violation--can be characterized as a constitutionally proscribed retaliatory act.

*Dawes v. Walker*, 239 F.3d 489, 491 (2d Cir. 2001) (citations omitted), *overruled on other grounds*, *Swierkewicz v. Sorema N.A.*, 534 U.S. 506 (2002).

To prevail on a First Amendment claim under 42 U.S.C. § 1983, a plaintiff must prove by the preponderance of the evidence that: (1) the speech or conduct at issue was "protected"; (2) the defendants took "adverse action" against the plaintiff–namely, action that would deter a similarly situated individual of ordinary firmness from exercising his or her constitutional rights; and (3) there was a causal connection between the protected speech and the adverse action--in other words, that the protected conduct was a "substantial or motivating factor" in the defendants' decision to take action against the plaintiff.  *Mount Healthy City Sch. Dist. Bd. of Educ. v. Doyle*, 429 U.S. 274, 287 (1977); *Gill*, 389 F.3d at 380 (citing *Dawes v. Walker*, 239 F.3d 489, 492 (2d. Cir. 2001)).

Once the plaintiff's burden of proving the three-part test is satisfied, "the burden then shifts to the defendant to show that the plaintiff would have received the same punishment even absent the retaliatory motivation."  *Gayle v. Gonyea*, 313 F.3d 677, 682 (2d Cir. 2002) (citing *Graham v. Henderson*, 89 F.3d 75, 79 (2d Cir. 1996)).  Thus, under this analysis, adverse action taken for both proper and improper reasons may be upheld if the action would have been taken based on the proper reasons alone.  *Graham*, 89 F.3d at 79 (citations omitted).

Defendant asserts that Plaintiff has failed to satisfy the third prong; in other words, Plaintiff has failed to show that retaliation was the substantial or moving factor in Defendant's decision to

discipline Plaintiff.[34]  Defendant also argues that Plaintiff would have been disciplined even in the absence of the "protected conduct" he is alleging.[35]

Plaintiff argues that retaliation was the motivating factor behind Defendant's actions.[36] Plaintiff also essentially argues that he would not have been disciplined even in the absence of the protected conduct.[37]

### 1.    Substantial or Motivating Factor

Several factors may be considered in determining whether a causal connection exists between the plaintiff's protected activity and a prison official's actions.  *Baskerville v. Blot*, 224 F.Supp.2d 723, 732 (S.D.N.Y. 2002) (citing *Colon v. Coughlin*, 58 F.3d 865, 873 (2d Cir. 1995)). Those factors include: (I) the temporal proximity between the protected activity and the alleged retaliatory act; (ii) the inmate's prior good disciplinary record; (iii) vindication at a hearing on the matter; and (iv) statements by the defendant concerning his motivation.  *Id.* (citing *Colon*, 58 F.3d at 872-73).  "The causal connection must be sufficient to support an inference that the protected conduct played a substantial part in the adverse action."  *Id.*

Regarding temporal proximity, "[a] plaintiff can establish a casual connection that suggests retaliation by showing that protected activity was close in time to the adverse action."  *Espinal v. Goord*, Dkt. No. 07-0612-pr, 2009 WL 483960, at *9 (2d Cir. Feb. 27, 2009) (citations omitted). No bright line test has been drawn "'to define the outer limits beyond which a temporal relationship

---

[34]    (Dkt. No. 45-7, at 3 [Def's Memo. of Law].)  I note that Defendant provides no supporting analysis of this issue.

[35]    (*Id.*)

[36]    (Dkt. No. 47 at 2-4 [Plf.'s Memo. of Law].)

[37]    (*Id.* at 2-7.)

is too attenuated to establish a casual relationship between the exercise of a federal constitutional right and an allegedly retaliatory action.'"  *Id.* (quoting *Gorman-Bakos v. Cornell Coop. Extension*, 252 F.3d 545, 554 (2d Cir. 2001)).  The Second Circuit held that the passage of "only six months" between the dismissal of a prisoner's lawsuit and an allegedly retaliatory beating by officers, one of whom was a defendant in the prior lawsuit, is sufficient to support an inference of a casual connection.  *Id.* (citing *Gorman-Bakos*, 252 F.3d at 555 (suggesting the lapse of five months between protected activity and retaliation may show a casual connection).

Here, Plaintiff alleges that Defendant filed the misbehavior report only eight days after Plaintiff filed his grievance against Defendant and only two days after Plaintiff filed his letter of complaint.[38]  Therefore, I conclude that the timing of the filing of the misbehavior report provides some support for an inference that the protected conduct played a part in the filing.

Moreover, Plaintiff points out certain statements allegedly made by Defendant concerning his motivation.[39]  Plaintiff alleges that Defendant yelled at Plaintiff, "[Y]ou listen to me.  I deny anything I want and you should have not wrote to the Captain and that grievance ant [sic] shit."[40]

Similarly, at the disciplinary hearing, Plaintiff described the incident as occurring, in part, as follows:

> I was by my door because it's right there by the stairs so I said uh, "Excuse me are you Lt. Lawrence?  He said "yes".  I said uh, "Did you receive two disbursement forms?"  He turned around he said **"Oh you must be Rivera."  I said "yes I'm (um you know) Mr. Rivera."  He said "Oh you're new in this facility aren't you?"  I said "Yeah I've been here maybe about three weeks."  He said "You got a lot to**

---

[38]   (Dkt. No. 1 at ¶¶9-14 [Complaint].)

[39]   (Dkt. No. 47 at 2 [Plf.'s Memo. of Law].)

[40]   (Dkt. No. 1 at ¶10 [Complaint].)  In his Answer, Defendant denies "knowledge or information sufficient to form a belief as to the truth" of these alleged statements.  (Dkt. No. 35 at ¶2 [Answer].)

learn."[41]

Further, at Plaintiff's deposition, Plaintiff stated that when he identified himself to Defendant, Defendant "basically . . . just said, ['] [O]h so you're Rivera,['], and out of nowhere he just started, you know, yelling, you know, **that grievance you placed and the letter you sent . . . ain't shit.  I believe he came out and said, ['] [W]ell, it seems like you knew and you don't know the rules.**[']"[42] In light of the foregoing, I find that it would be reasonable to infer from Defendant's alleged statements that he may have acted with a retaliatory motive.

Moreover, Defendant's testimony at the disciplinary hearing is somewhat internally inconsistent.  While Defendant described Plaintiff as "demanding" and "insolent,"[43] when asked by the Hearing Officer if there was "any verbal harassment, you know, any profanity or anything like that," Defendant responded, "No profanity."[44]  Defendant also testified, as pointed out by Plaintiff,[45] that during the incident Defendant never told the housing unit officer, who watched the incident,[46] that he "had a problem" with Plaintiff.[47]

Viewing the evidence in the light most favorable to Plaintiff, I find that there is a genuine issue of material fact as to whether retaliation was a substantial or motivating factor in Defendant's filing of the misbehavior report.  *See Ahlers v. Grygo*, No. 02-CV-3256, 2009 WL 691927, at *7

---

[41]   (Dkt. No. 45, Part 4, Ex. C at pp. 5-6 (emphasis added) [Disciplinary Hearing Transcript].)

[42]   (Dkt. No. 45, Part 4, Ex. A at p. 34 (emphasis added) [Plaintiff's Deposition].)

[43]   (Dkt. No. 45, Part 4, Ex. C at 13 [Disciplinary Hearing Transcript].)

[44]   (*Id.*)

[45]   (Dkt. No. 47, at 4 [Plf.'s Memo. of Law].)

[46]   (Dkt. No. 45, Part 4, Ex. C at 19 [Disciplinary Hearing Transcript].)

[47]   (Dkt. No. 45, Part 4, Ex. C at 14 [Disciplinary Hearing Transcript].)

(E.D.N.Y. Mar. 13, 2009) (finding that it would be reasonable to infer from a correction officer's statements, including "what goes around, comes around," and "payback is a bitch," that he was threatening retribution against prisoner) (citing *Colon*, 58 F.3d at 873 (holding that disparity between the affidavits of a prisoner and corrections officer "itself creates a credibility issue that is not readily amenable to resolution on summary judgment")).

> ### 2.   Basis for Adverse Action

Given the foregoing analysis, Defendant is not entitled to summary judgment unless he can establish, as a matter of law, that Defendant would have filed the misbehavior report "even in the absence of the protected conduct." *Mount Healthy Sch. Dist.*, 429 U.S. at 287.

Defendant argues that Plaintiff would have been disciplined even in the absence of the protected conduct.[48]  For support, Defendant cites *Hynes v. Squillace*, 143 F.3d 653, 657 (2d Cir. 1998), for the proposition that "if prison officials demonstrate that plaintiff committed the prohibited conduct, defendants are entitled to judgment on retaliation claims flowing from misbehavior reports regardless of motive."[49]  Defendant argues that the following evidence demonstrates that Plaintiff would have been found guilty of the charged conduct even in the absence of the protected conduct: the misbehavior report; the guilty finding; the testimony of Defendant, Officer Tedesco, and Plaintiff at the disciplinary hearing; and Plaintiff's deposition testimony.[50]

However, in *Hynes*, among the evidence demonstrating that the plaintiff committed "the most serious, if not all, of the prohibited conduct" was the plaintiff's concession to the most serious

---

[48]     (Dkt. No. 45, Part 7 at 4-6 [Def.'s Memo. of Law].)

[49]     (*Id.* at 4.)

[50]     (*Id.* at 4-5.)

charge (refusal to obey a direct order).[51]  Additionally, the plaintiff, who was also charged with

making a threat, "admitted that he was loud and boisterous and had made some threats."[52]

However, this, unlike *Hynes*, is not a case where Plaintiff has conceded to the charge.

Plaintiff essentially denies that he harassed Defendant.[53]  While Plaintiff admits that he asked

Defendant why the disbursement requests were denied and then stated that Defendant "ha[d] to give

a reason why" the forms were denied, Plaintiff argues that he was merely seeking an "answer in

good faith."[54]  Plaintiff also argues that he was never threatening or disrespectful.[55]  For support,

Plaintiff points to the testimony of Defendant and Officer Tedesco at the disciplinary hearing, and to

the March 30, 2005 "housing unit log" which he claims shows an absence of an entry indicating that

there was a security incident.[56]

It is therefore disputed whether Plaintiff committed the prohibited conduct.  Accordingly, at

this stage of the proceeding Defendant has not met his burden of establishing that he would have

filed the misbehavior report even in the absence of the protected conduct.[57]  The credibility of the

---

[51]     *Hynes*, 143 F.3d at 657.

[52]     (*Id.*)

[53]     (Dkt. No. 47 at 2-4 [Plf.'s Memo. of Law]; *see also* Dkt. No. 1 at 10 [Complaint, alleging that he was "unjustly and unlawfully convicted of such charge based on contrived evidence"].)

[54]     (Dkt. No. 47 at 4 [Plf.'s Memo. of Law].)

[55]     (*Id.* at 3-4.)

[56]     (*Id.*)

[57]     *See Gayle v. Gonyea*, 313 F.3d 677, 684 (2d Cir. 2002) (holding that the prison officials at the summary judgment stage failed to meet their burden of establishing as a matter of law that the prisoner "would have been punished to the same extent he was punished in the absence of a retaliatory motive" where it was *disputed* whether the prisoner "committed all of the prohibited conduct, and, more important, whether he committed the most serious of the conduct - threatening to instigate inmate unrest"); *see also Ashley v. Wakefield*, 367 F. Supp. 2d 461, 468 (W.D.N.Y. 2005) (holding that the prison officers did not satisfy their burden of showing that they would have taken the same adverse actions even in the absence of the prisoner's protected activities where the prisoner denied engaging in the

witnesses and the weight of the evidence are issues within the province of the jury, and not for the Court to decide on summary judgment.[58]   Accordingly, Defendant's motion for summary judgment in this regard should be denied.

> ### B.      Qualified Immunity

Defendant argues that he is "still entitled to prevail on the defense of qualified immunity."[59] Plaintiff claims that Defendant is not entitled to qualified immunity.[60]

The doctrine of qualified immunity "protects government officials 'from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known.'" *Pearson v. Callahan*, 129 S.Ct. 808, 815 (2009) (citing *Harlow v. Fitzgerald*, 457 U.S. 800, 812 (1982)).  A determination of this issue involves deciding whether the facts that a plaintiff has alleged, or shown, make out a violation of a constitutional right, and whether the right at issue was clearly established at the time of the defendant's alleged misconduct.  *Pearson*, 129 S. Ct. at 815-16 (citing *Saucier v. Katz*, 533 U.S. 194 (2001))).

A right is sufficiently clearly established if 'it would be clear to a reasonable officer that his

---

alleged conduct).

[58]       *See Ashley*, 367 F. Supp. 2d at 468 (citing *Graham*, 89 F.3d at 81 (finding that the plaintiff's "punishment was either wholly retaliatory or it was not retaliatory at all.  This question runs to matters of credibility and weight of the evidence, which are matters for the jury."); *Colon v. Coughlin*, 58 F.3d 865, 872 (2d Cir. 1995) (finding that summary judgment was inappropriate where there was evidence of admission of retaliatory motive by defendants and circumstantial evidence based on temporal proximity between grievance and retaliation); *Jones v. Coughlin*, 45 F.3d 677, 680 (2d Cir. 1995) (stating that "determinations as to whether to credit such testimony and as to what inference to draw from the sequence of events is within the province of the factfinder at trial on the retaliation claims, not of the court on a motion for summary judgment.")).

[59]       (Dkt. No. 45, Part 7 at 6-9 [Def.'s Memo. of Law].)

[60]       (Dkt. No. 47 at 5-7 [Plf.'s Memo. of Law].)

conduct was unlawful in the situation he confronted.'" *Higazy v. Templeton*, 505 F.3d 161, 169, n.8

(2d Cir. 2007).  The following three factors are considered when determining whether a particular

right was clearly established at the time a defendant acted:

> (1) whether the right in question was defined with 'reasonable specificity'; (2)
> whether the decisional law of the Supreme Court and the applicable circuit court
> support the existence of the right in question; and (3) whether under preexisting law
> a reasonable defendant official would have understood that his or her acts were
> unlawful.

*Jermosen v. Smith*, 945 F.2d 547, 550 (2d Cir. 1991) (citations omitted), *cert. denied*, 503 U.S. 962

(1992).[61]  "As the third part of the test provides, even where the law is 'clearly established' and the

scope of an official's permissible conduct is 'clearly defined,' the qualified immunity defense also

protects an official if it was 'objectively reasonable' for him at the time of the challenged action to

believe his acts were lawful."  *Higazy*, 505 F.3d at 169-70 (citations omitted).[62]  This "objective

reasonableness" part of the test is met if "officers of reasonable competence could disagree on [the

legality of defendant's actions]."  *Malley v. Briggs*, 475 U.S. 335, 341 (1986).  As the Supreme

Court has explained,

> [T]he qualified immunity defense . . . provides ample protection to all but the plainly
> incompetent or those who knowingly violate the law. . . . Defendants will not be
> immune if, on an objective basis, it is obvious that no reasonably competent officer

---

[61]     *See also Pena v. DePrisco*, 432 F.3d 98, 115 (2d Cir. 2005); *Clue v. Johnson*, 179 F.3d 57, 61 (2d Cir. 1999); *McEvoy v. Spencer,* 124 F.3d 92, 97 (2d Cir. 1997); *Shechter v. Comptroller of City of New York,* 79 F.3d 265, 271 (2d Cir. 1996); *Rodriguez v. Phillips*, 66 F.3d 470, 476 (2d Cir. 1995); *Prue v. City of Syracuse*, 26 F.3d 14, 17-18 (2d Cir. 1994); *Calhoun v. New York State Division of Parole*, 999 F.2d 647, 654 (2d Cir. 1993).

[62]     *See also Anderson v. Creighton*, 483 U.S. 635, 639 (1987) ("[W]hether an official protected by qualified immunity may be held personally liable for an allegedly unlawful official action generally turns on the 'objective reasonableness of the action.'") [citation omitted]; *Davis v. Scherer*, 468 U.S. 183, 190 (1984) ("Even defendants who violate [clearly established] constitutional rights enjoy a qualified immunity that protects them from liability for damages unless it is further demonstrated that their conduct was unreasonable under the applicable standard."); *Benitez v. Wolff*, 985 F.2d 662, 666 (2d Cir. 1993) (qualified immunity protects defendants "even where the rights were clearly established, if it was objectively reasonable for defendants to believe that their acts did not violate those rights").

would have concluded that a warrant should issue; but if officers of reasonable competence could disagree on this issue, immunity should be recognized.

*Malley*, 475 U.S. at 341.

However, when "there are facts in dispute that are material to a determination of reasonableness," dismissal on the basis of a qualified immunity defense is inappropriate. *Thomas v. Roach*, 165 F.3d 137, 143 (2d Cir. 1999); *Ali v. Szabo*, 81 F. Supp. 2d 447, 461 (S.D.N.Y. 2000) ("The Court cannot conclude as a matter of law that [the officers'] conduct was objectively reasonable since there are material issues of fact as to whether [plaintiff] was obeying the officers' order and who started the physical confrontation.").

The Court has found that Defendant should not be entitled to summary judgment on the merits of the retaliation claim because there are genuine issues of material fact as to whether retaliation was a substantial or motivating factor, and whether Defendant would have filed the misbehavior report even in the absence of the protected conduct. Therefore, Defendant should not be entitled to summary judgment on the defense of qualified immunity. *See Hemphill v. Schott*, 141 F.3d 412, 418 (2d Cir. 1998) ("[S]ummary judgment based either on the merits or on qualified immunity requires that no disputes about material facts remain.") (citations omitted); *Deal v. Yurack*, No. 9:04-CV-0072, 2007 WL 2789615, at *14 (N.D.N.Y. Sept. 24, 2007) (Kahn, J.) (adopting Report-Recommendation of Magistrate Judge David E. Peebles, finding that whether "the defendants maintained a good faith belief that their actions did not violate clearly established rights depends on the resolution of fact issues similar to those identified as precluding entry of summary judgment on the merits of plaintiff's retaliation and excessive force claims. As such . . . the court is

16

not currently positioned to determine defendant's entitlement to qualified immunity.").[63]

Accordingly, I recommended denying summary judgment in this regard.

### C.     Plaintiff's "Motion" for Summary Judgment

Plaintiff asserted in his Memorandum of Law in Opposition to Defendant's Summary

Judgment Motion that he was therein moving for summary judgment.[64]  To the extent that Plaintiff

is moving for summary judgment, Plaintiff's "motion" is defective for several reasons and should be

denied.

First, Plaintiff never filed an actual motion for summary judgment.  He simply asserts in his

memorandum that he "herein move[s] for summary judgment against Defendant Lawrence."[65]

Moreover, Plaintiff failed to file a supporting memorandum of law, supporting affidavit, and proof

of service on all the parties.  *See* N.D.N.Y. L.R. 7.1(a).

Second, Plaintiff asserts in his memorandum that "there *are* issues of fact that exist with

respect to the denial of Plaintiff's due process rights[66] and retaliation claims."[67]  However, under

Fed. R. Civ. P. 56, summary judgment is warranted if "the pleadings, depositions, answers to

---

[63]     *See also Jeanty v. County of Orange*, 379 F. Supp. 2d 533, 542 (S.D.N.Y. 2005) ("[T]he same genuine issues of material fact that preclude summary judgment on plaintiff's excessive force claim, also preclude application of the defense of qualified immunity at the summary judgment stage."); *Dellamore v. Stenros*, 886 F. Supp. 349, 352 (S.D.N.Y. 1995) (finding that material factual disputes exist on the issue of qualified immunity for the same reasons that the court denied the motion for summary judgment on the plaintiff's Eighth Amendment excessive force claim).

[64]     (Dkt. No. 47 at 2 [Plf.'s Memo. of Law].)

[65]     (Dkt. No. 47 at 2 [Plf.'s Memo. of Law].)

[66]     To the extent that Plaintiff asserts a due process claim, the Court is unable to address this argument, since the only remaining claim in this case is the First Amendment retaliation claim.  *See* Dkt. No. 34 at 4 [March 29, 2007 Order by Senior Judge McAvoy, granting Defendants' motion to dismiss as to all claims except the First Amendment retaliation claim].)

[67]     (Dkt. No. 47 at 2 (emphasis added) [Plf.'s Memo. of Law].)

interrogatories, and admissions on file, together with the affidavits, if any, *show that there is no genuine issue as to any material fact* and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c) (emphasis added).

Third, even if the Court were to find that Plaintiff had in essence filed a motion for summary judgment, Plaintiff failed to file a proper Rule 7.1 Statement of Material Facts. Plaintiff provided a "Statement of Material Facts Of Which There [Is] No Genuine Issue" in which he sets forth thirteen (13) numbered paragraphs, which he describes as "facts in this action as to which this [sic] *is* genuine issues [sic]."[68] Under Rule 7.1, the Statement of Material Facts shall set forth, in numbered paragraphs, each material fact about which the moving party contends there exists *no* genuine issue. N.D.N.Y. L.R. 7.1(a)(3). Moreover, Plaintiff failed to provide specific citations to the record where the alleged facts are established.[69] Rule 7.1 requires that each fact listed shall set forth a specific citation to the record where the fact is established. N.D.N.Y. L.R. 7.1(a)(3). Pursuant to Rule 7.1, "Failure of the moving party to submit an accurate and complete Statement of Material Facts shall result in a denial of the motion." *Id.* (original emphasis). Therefore, to the extent that Plaintiff is moving for summary judgment, I recommend that this motion be denied.

**ACCORDINGLY**, it is

**RECOMMENDED** that Defendant's motion for summary judgment (Dkt. No. 45) be **DENIED**; and it is further

**RECOMMENDED** that to the extent that Plaintiff moves for summary judgment in his Memorandum of Law in Opposition to Defendant's Summary Judgment Motion (Dkt. No. 47), this

---

[68]   (Dkt. No. 47, Part 2 (emphasis added) [Plf.'s Rule 7.1 Statement].)

[69]   (Dkt. No. 47, Part 2 (emphasis added) [Plf.'s Rule 7.1 Statement].)

motion be **<u>DENIED</u>**.

ANY OBJECTIONS to this Report-Recommendation must be filed with the Clerk of this Court within TEN (10) WORKING DAYS, PLUS THREE (3) CALENDAR DAYS from the date of this Report-Recommendation (unless the third calendar day is a legal holiday, in which case add a fourth calendar day). *See* 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b); N.D.N.Y. L.R. 72.1(c); Fed. R. Civ. P. 6(a)(2), (d).

BE ADVISED that the District Court, on *de novo* review, will ordinarily refuse to consider arguments, case law and/or evidentiary material that could have been, but was not, presented to the Magistrate Judge in the first instance.[70]

BE ALSO ADVISED that the failure to file timely objections to this Report-Recommendation will PRECLUDE LATER APPELLATE REVIEW of any Order of judgment that will be entered. *Roldan v. Racette*, 984 F.2d 85, 89 (2d Cir. 1993) (citing *Small v. Sec'y of H.H.S.*, 892 F.2d 15 [2d Cir. 1989]).

---

[70]        *See, e.g., Paddington Partners v. Bouchard*, 34 F.3d 1132, 1137-38 (2d Cir. 1994) ("In objecting to a magistrate's report before the district court, a party has no right to present further testimony when it offers no justification for not offering the testimony at the hearing before the magistrate.") [internal quotation marks and citations omitted]; *Pan Am. World Airways, Inc. v. Int'l Bhd. of Teamsters*, 894 F.2d 36, 40 n.3 (2d Cir. 1990) (district court did not abuse its discretion in denying plaintiff's request to present additional testimony where plaintiff "offered no justification for not offering the testimony at the hearing before the magistrate"); *Alexander v. Evans*, 88-CV-5309, 1993 WL 427409, at *18 n.8 (S.D.N.Y. Sept. 30, 1993) (declining to consider affidavit of expert witness that was not before magistrate) [citation omitted]; *see also Murr v. U.S.*, 200 F.3d 895, 902, n.1 (6th Cir. 2000) ("Petitioner's failure to raise this claim before the magistrate constitutes waiver."); *Marshall v. Chater*, 75 F.3d 1421, 1426 (10th Cir. 1996) ("Issues raised for the first time in objections to the magistrate judge's recommendations are deemed waived.") [citations omitted]; *Cupit v. Whitley*, 28 F.3d 532, 535 (5th Cir. 1994) ("By waiting until after the magistrate judge had issued its findings and recommendations [to raise its procedural default argument] . . . Respondent has waived procedural default . . . objection[].") [citations omitted]; *Greenhow v. Sec'y of Health & Human Servs.*, 863 F.2d 633, 638-39 (9th Cir. 1988) ("[A]llowing parties to litigate fully their case before the magistrate and, if unsuccessful, to change their strategy and present a different theory to the district court would frustrate the purpose of the Magistrates Act."), *overruled on other grounds by U.S. v. Hardesty*, 977 F.2d 1347 (9th Cir. 1992); *Patterson-Leitch Co. Inc. v. Mass. Mun. Wholesale Elec. Co.*, 840 F.2d 985, 990-91 (1st Cir. 1988) ("[A]n unsuccessful party is not entitled as of right to de novo review by the judge of an argument never seasonably raised before the magistrate.") [citation omitted].

Dated: March 31, 2009
      Syracuse, New York

                                   George H. Lowe
                                   United States Magistrate Judge